NORTHERN RAILROAD v. MANCHESTER & NORTH WEARE RAIL-
ROAD & a.

A statute authorizing a railroad company to discontinue its road is not a
delegation of legislative power.

The charter of the Manchester & North Weare Railroad (Laws 1858, c.
2,155), authorizing that company to buy the N. H. Central road and
to enjoy all the rights of the N. H. Central company, does not authorize
a breach of contract that would be committed by the use of a discon-
tinued part of the road.

BILL IN EQUITY, for an injunction.

*O. E. Branch, C. H. Burns,* and *I. W. Drew,* for the plaintiffs.

*D. Cross* and *F. S. Streeter,* for the defendants.

DOE, C. J. Chapter 1,911, Laws 1856, provided for the foreclos-
ure of the mortgage of the Contoocook Valley Railroad by sale to
the Contoocook River Railroad, authorized the River company to
unite with the Merrimack & Connecticut company, and authorized
the united companies "to provide for the discontinuance of such
portion or portions of the tracks and road of either of said corpo-
rations as shall be deemed by the directors of said corporations
unnecessary by reason of such union; and after such union the
portion or portions of track and road so agreed to be discontinued
may and shall be discontinued: *Provided,* however, that there
shall be at least one line of railroad extending to and beyond
Henniker." Corning and Gilmore were the River company.
Laws 1856, c. 1,914. October 17, 1857, the Valley road was con-
veyed to Corning, who conveyed it to the Contoocook River com-
pany (*i. e.,* to Gilmore and himself). The River company paid
him for the Valley by giving him a note of the Valley for $30,000,
and gave him a mortgage of the road to secure the note, and he
transferred the note and mortgage to the Northern. Laws of
1858, c. 2,168, provided that all powers relating to discontinuance
granted by the act of 1856 to the River and Merrimack & Con-
necticut, to be exercised upon their union into one corporation,
might be exercised by them without such union, and authorized
the River to execute all deeds, mortgages, and conveyances that
might be deemed necessary to carry into effect *s.* 2 of *c.* 1,911,
Laws 1856. The Merrimack & Connecticut company had been
formed by the union of the Central and the Concord & Claremont.
The Central had been mortgaged and delivered to the mortgagees
who were operating it, and the Northern owned the mortgage
bonds to the amount of $195,000.

October 13, 1858, Corning and Kettell (one of the mortgage trustees of the Central and a director of the Northern) signed an agreement for carrying out the plan of discontinuance, Kettell explaining his position by adding to his signature "for the parties in interest," the Northern. The last clause of the agreement was,—"Said Corning and his assigns agree so to conduct the business of said N. H. Central Railroad as in no way whatever to compete with the Contoocook River Railroad." October 29, 1858, the River company and the Merrimack & Connecticut company passed votes for discontinuance. On the same day there were transactions which were in effect an exchange made by the Northern of the Central for the River. October 31, 1858, the track of the Central between North Weare and Henniker was taken up and the bridge at Henniker was removed by Gilmore, who was superintendent of the Concord, and the rails and ties were sold under the agreement of October 13; and that part of the Central has not been operated since October 31, 1858.

The entire legal character and effect of the discontinuance authorized by the acts of 1856 and 1858, agreed to by all parties in interest, and carried into execution in pursuance of their agreements and the statute, need not now be determined. The defendants contend that the acts authorizing it were an unconstitutional delegation of legislative power. The charter of the Central company (Laws 1848, *c.* 662) authorized them to construct and keep in use a railroad from Manchester to Claremont, and provided (*s.* 7) that the charter should be void as to every portion of the road not completed January 1, 1860. Although the question whether any part of the road should be constructed was submitted to the company, there was no delegation of legislative power. *Petition of Mt. Washington Road Co.*, 35 N. H. 134, 140, 141 ; Tiedeman Police Powers, *s.* 121 *a*. The legislative question was decided by the legislature. The expediency of the investment was a question of discretion necessarily referred to the stockholders. The same distinction is to be observed in the acts of discontinuance. The legislature determined the legislative question, released the company from their obligation to remain in the public service, and left them to judge of their own interests as investors.

Whatever else the discontinuance may be, it is an executed agreement of all parties in interest, authorized by express statute. The facts stated in the case show that it was a part of the transaction in which the Northern exchanged the Central for the River, and a part of the basis of that exchange. Upon those facts a restoration of the disused road by the defendants would be a violation of contract and a breach of faith. What new rights may be acquired in future proceedings under recent laws is a question to be considered when it arises. Upon the facts stated in the case, it would be inequitable for the defendants to reconstruct and operate the disused road unless they derive an equitable power to do it

from the charter of the Manchester & North Weare.    Laws 1858, c. 2,155.

This charter was granted two years after the first act authorizing the discontinuance, on the union of the River and the Merrimack & Connecticut, and two days after the passage of the second act authorizing the discontinuance without such union.    It contains no allusion to either of the discontinuing acts.    There is no express repeal of the discontinuing law, and no repugnancy from which a repeal can be implied.   The general terms,—"All the rights, franchises, and privileges heretofore conferred by law upon said N. H. Central," to "be held and enjoyed in the same manner as the same were held and enjoyed by said N. H. Central R. R. Company before said Merrimack & Connecticut River Railroad was constituted,"—are explained by what follows:  "And the provisions of the act relating to the union of the Concord & Claremont Railroad and the N. H. Central Railroad Company, approved January 8, 1853 [Laws 1852, c. 1,347], so far as inconsistent with the provisions of this act, shall become and thereafter be inoperative and void."    The clause referring to the powers held and enjoyed by the Central before the Merrimack & Connecticut was constituted by the union of the Central and the Concord & Claremont has no reference to the discontinuance authorized with and without the union of the River and the Merrimack & Connecticut.    There is no reason to believe these general terms were intended to repeal the discontinuing acts, or to authorize a breach of any agreement that had been or might be made under existing law; and the question of power to authorize a breach of contract does not arise.    The plaintiffs are entitled to an injunction against the use of the discontinued part of the road.

*Case discharged.*

BLODGETT and CHASE, JJ., did not sit: the others concurred.