STATE ex rel. HARRY GRAHAM v. THOMAS McMAHON, Bailiff.[1]

July 8, 1896.

Nos. 10,183—(328).

**Boiler Inspectors Act—Exemption of Locomotive Engineers.**

G. S. 1894, § 493,—a part of the act of 1889, generally known as the "Boiler Inspectors Act,"—construed. Held, under the language used in that section, that locomotive engineers only are exempt from the provision which requires all persons intrusted with the operation of steam boilers or steam machinery to procure a license.

**Same—Inspection by Insurance Companies.**

Held, further, that steam boilers brought within the exemption provided for in the same section are those which have been inspected by insurance companies duly authorized, and whose business it is to insure steam boilers within this state, which have been inspected and certified as safe by the inspectors of such companies.

**Same—Constitution.**

None of the provisions of said section 493 render the act of 1889 unconstitutional.

Appeal by respondent from an order of the district court for Ramsey county, Egan, J., ordering discharge of relator on return of a writ of habeas corpus. Reversed.

Relator was detained under a warrant for his arrest issued by the municipal court of the city of St. Paul.

*Herman Oppenheim*, for appellant.

*Weed Munro*, for relator.

[1] Reported in 68 N. W. 77.

COLLINS, J.[2] In this case, which is an appeal by the respondent, under the provisions of Laws 1895, c. 327, from an order discharging the relator in a habeas corpus proceeding, we are required to pass upon the constitutionality of an act of the legislature (Laws 1889, c. 253) generally known as the "Boiler Inspectors Act" (G. S. 1894, §§ 480–494, inclusive).

The claim is made in behalf of the relator (who was arrested upon a warrant issued upon a complaint charging him with having wrongfully and unlawfully operated a steam boiler, and stationary engine attached thereto, without first having obtained a license) that, because of the exemptions provided for in section 493, the act is unequal and partial, and is class legislation, forbidden by the constitution. If the construction placed on the language found in said section, by relator's counsel, is correct, his argument upon the unconstitutionality of the whole act would be unanswerable, but we are of the opinion that this section should not be construed as counsel claims.

Omitting a proviso which is of no consequence here, the section reads as follows:

"Sec. 493. This act shall not apply to railroad locomotives, nor shall engineers employed by railroad companies be required to procure licenses from the state board of inspectors. Nor shall it apply to boilers inspected by insurance companies and certified by their authorized inspectors to be safe. * * *."

Briefly stated, the position of counsel is that this section must be construed as exempting, in terms, from the operation of the requirement to obtain licenses, all engineers who may be employed by railroad companies, whether as locomotive engineers, or in operating stationary engines used in office buildings, station houses, grain elevators, pumping stations, and even on wood-sawing machines, and that it must also be construed as exempting from inspection all boilers which may be inspected by insurance companies, and certified to be safe by their inspectors, without regard to the character of insurance business these companies may be engaged in or authorized to do. It is further claimed that the provision respecting boilers inspected by insurance companies is obnoxious to the constitution, be-

[2] Mitchell, J., took no part.

cause it is an unwarranted and unreasonable delegation of the police power of the state to such companies.

The object of the act of 1889 was to provide for the inspection of steam boilers, and the examination, as to qualifications, of persons intrusted with their management, or with the management of any machinery operated by steam within this state, that its citizens might be protected from the greatly-increasing hazards arising out of defective construction, or want of care and repair, of boilers, as well as unskillfulness and incompetency on the part of the hundreds of persons engaged in handling them and their appliances. It was intended as a police regulation designed to secure public safety; and in view of the universal use of steam in all kinds of manufacturing and mechanical business, and even in farming operations,—small as well as large,—no one should doubt the wisdom of the enactment and enforcement of a reasonable measure in reference to the inspection of such dangerous agencies as steam boilers, and the machinery connected therewith, and the examination, as to their qualifications, of those who are intrusted with their management.

Having in mind the object in view, and the methods to be adopted to accomplish this object, there can be no valid reason why the legislature could not exempt from the operation of the act certain classes of subjects and persons, provided some solid and substantial ground or basis for the exemption actually existed. An exemption of a certain class of boilers, or of persons, not based upon such a difference in the situation or circumstances of the subjects placed in different classes by means of the exemption as suggests the necessity or propriety thereof, could not be sustained. And not only must all persons and subjects brought under the influence of the legislative act be treated alike, under the same conditions, but, in its classification, it must bring within its influence all persons who, and all subjects which, are under the same conditions.

Although counsel for relator has suggested that no apparent reason exists for any discrimination in favor of locomotive boilers or locomotive engineers, or in favor of boilers which are inspected by boiler insurance companies, he does not urge the point. It is evident, however, that the difference in the situation and circumstances of the persons and the boilers placed within the exemption suggested the propriety of the same; for it is a matter of common knowledge

that locomotives are subjected to frequent—almost continual—inspection, while locomotive engineers must of necessity be well qualified and skillful, and, further, that if the latter fail to exercise a high degree of ability and care they are at once discharged. And it is also known that companies engaged in the business of insuring steam boilers not only inspect before accepting a risk, but also exercise continual supervision over them for their own protection. The contention here is therefore reduced to the question of construction.

1. Was it the manifest intention of the legislature, when using the words, "nor shall engineers employed by railroad companies be required to procure licenses," to exempt locomotive engineers only? If so, the objection to this feature of the section is removed. We are of the opinion that none but locomotive engineers were intended to be exempted. Reference to railroad locomotives, exempting them from inspection, had just been made, and the above-quoted language —following, as it does, immediately—must be construed as applying solely to locomotive engineers. And again, in common phrase, when people speak of an engineer employed by a railroad company, they always refer to locomotive engineers, not to men who may be employed in running stationary engines for the company. Had the words used been "locomotive engineers," there would have been more conciseness of statement, but we are not to discover the legislative intent by determining what language would have best expressed it.

2. The act is not to apply to boilers inspected by insurance companies, and certified by their inspectors to be safe. We are again compelled to ascertain what was intended by the use of this language. It is also a matter of common knowledge that insurance companies are engaged in the business of insuring steam boilers against explosions, and, with this knowledge, it is obvious that the boilers thus brought within the exemption are those which have been inspected by insurance companies duly authorized, and whose business it is to insure steam boilers within this state which have been certified as safe by the inspectors of such companies. There is no ground for saying that this language is capable of being construed as exempting a boiler inspected by a company not engaged in the business of insuring boilers, and for that purpose causing them to be inspected.

There is nothing in the point that there was an unwarranted delegation of the police power of the state when the legislature declared

that the certificate of the inspector of one of these companies that a boiler was safe should exempt it from the operations of the law.

This disposes of the case, and the result is that the order appealed from is reversed, and judgment will be entered in this court remanding the relator to respondent's custody.