sulted from the omission, to justify an assessment of damages. Therefore I dissent.

---

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* NEAL.

Opinion delivered October 15, 1906.

1.  APPEAL—REJECTION OF EVIDENCE—PREJUDICE.—In an action against a railroad company for the negligent killing of a brakeman, it was not prejudicial error to reject evidence that bystanders who were present when the accident occurred predicted that the defendant would be killed, if their predictions were verified by the result. (Page 598.)

2.  CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.—The act of Congress of March 28, 1893, vests the American Railway Association with authority to designate the standard height of drawbars and the maximum variation from such height, and provides that no freight cars shall be used in interstate traffic which do not comply with such standard. *Held,* that such act is not unconstitutional as vesting the American Railway Association with legislative power. (Page 598.)

3.  REMOVAL OF CASES—REMAND—REVIEW.—Where a cause was removed from a State to a Federal court, and was remanded by the latter court to the former court, the propriety of the remanding order will not be reviewed in the State court. (Page 599.)

4.  SAME—SUCCESSIVE PETITIONS.—Defendant can not sustain a second petition for removal upon the ground that plaintiff has amended his complaint since the first petition was denied if the amendment did not raise any Federal question not raised in the original complaint. (Page 600.)

5.  FORMER APPEAL—LAW OF THE CASE.—While a decision on a former appeal upon the facts is not binding on a second appeal where the facts are different, the construction of the act of Congress of March 2, 1893, relating to automatic couplers, in the former opinion in this case is the law of this case. (Page 601.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

STATEMENT BY THE COURT.

The St. Louis, Iron Mountain and Southern Railway Company owned and operated a railway, which was engaged in in-

terstate commerce, and extended from the city of Van Buren, in this State, through the Indian Territory, to the city of Coffeyville, in the State of Kansas. The town of Sallisaw, in the Indian Territory, is on its line of railway. George W. Taylor was employed by it as a brakeman on one of its freight trains. On the 18th of January, 1899, this train left Van Buren for Coffeyville. It had two cars to be left at Sallisaw. When it reached that place, the train was uncoupled for the purpose of leaving these cars on the side track, and the engine, with several cars attached, moved forward, leaving the caboose and other cars standing on the main line. The two cars that were to be left were placed on the side track, and the cars attached to the engine were pushed or kicked back towards the caboose and cars left on the main line. The front car of those pushed or kicked back on the main track, it being first in line in the direction they were moving, was equipped with "the old-fashioned link and pin drawbar." It was moved back for the purpose of attaching it to the cars left with the caboose. The car to which it was to be coupled was equipped with an automatic coupler, but its drawhead was so made "that the link and pin coupler could be used when it was necessary to couple to a car having that coupling." As the cars to be coupled were coming together, Taylor stepped between them, and inserted a link in the drawhead of the automatic coupler. The cars approaching came with great force; and when they were near the car to which they were to be linked, he endeavored to get from between them, but was caught and killed.

Jonathan Neal was appointed administrator of the estate of the deceased, qualified as such, and brought this action against the Railway Company for the damages to his widow and next of kin caused by his death, alleging that it was the result of the negligence of the defendant in failing to have the drawbars on the cars that he attempted to couple "of even, uniform or standard height, as required by the laws of Congress." The defendant answered, and denied that its negligence contributed to the death of plaintiff's intestate, and alleged that it was caused by his own negligence.

The issues in the action were tried by a jury in the Crawford Circuit Court; the defendant recovered a judgment; plain-

tiff appealed to this court; the judgment was reversed, and the cause was remanded for a new trial. *Neal* v. *St. Louis, Iron Mountain & Southern Railway Co.,* 71 Ark. 445.

Upon a second trial in the circuit court the plaintiff recovered a judgment for $14,000; and the defendant appealed.

The law of Congress on which this action is based is section five of an act of Congress entitled "An act to promote the safety of employees and travelers upon railroads by compelling common carriers in interstate commerce to equip their cars with automatic couplers and continuous brakes, and their locomotives with driving-wheel brakes, and for other purposes," approved March 2, 1893, which is as follows: "That within ninety days from the passage of this act the American Railway Association is authorized hereby to designate to the Interstate Commerce Commission the standard height of drawbars for freight cars, measured perpendicular from the level of the tops of the rails to the centers of the drawbars, for each of the several gauges of railroad in use in the United States, and shall fix a maximum variation from such standard height to be allowed between the drawbars of empty and loaded cars. * * * And after July 1, 1895 no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard above provided for."

Within the time designated by the act the American Railway Association filed with the Interstate Commerce Commission the certificate of their designation, which, in part, is as follows: "Resolved, that the standard height of drawbars for freight cars, measured perpendicular from the level of the tops of the rails to the center of drawbars, for standard guage railroads in the United States, shall be thirty-four and one-half inches and the maximum variation from such standard height to be allowed between the drawbars of empty and loaded cars shall be three inches."

In the second trial Earl Witt, a brakeman, testified that he saw the cars the deceased attempted to couple, after the accident, and that the automatic coupler appeared to be about three or four inches lower than the other; and that to determine this difference he made no close inspection or measurement. Charles Lattin, another brakeman, testified that he examined them, and

one appeared to be one, one and a half, or two inches higher than the other, and one two inches thicker than the other. He says: "When the cars came together, I noticed these two draw-bars, the best I could see, passed each other kind of to the side and over the top. In the automatic coupler there is an opening that is called a jaw; space in ·there that fastens in the knuckle. The drawbar appeared to go in this opening of the automatic coupler." Again he says: "A brakeman handed me the link (the link with which the deceased attempted to couple the cars). I found one drawhead broken off; one part of the automatic coupler was broken off. The knuckle on the automatic coupler was broken off. There was a scratch or two on the automatic drawhead; I think the jaw had scratched on it; on the side of the corner. The link had a bright place on the top of it; a bright mark on the link. The link was twelve or fourteen inches in length. The bright spot on the link was on the side of it—on the flat side of the link. On top is all I noticed. It was on the flat side of the link. Both prongs of the link were bright." He testified that one car was loaded to its full capacity, and that the other had a light load. W. H. McPherson and M. D. Sanders, car inspectors, testified that they examined the cars a very short time after the accident, while they were standing on the track, and measured the height of the drawbar in each car at the ends, where the same came together in the collision, from the centers of the drawbars to the top of the rail, and found that the height of one was 32½ inches and of the other 33½ inches, a difference of one inch.

The evidence tended to show that Taylor attempted to couple the cars, and, failing to do so, to get from between them before they collided, and was caught and killed. Witnesses present testified that the moving car was traveling at a speed which they variously estimate from three to eight miles an hour.

Defendant offered to prove by many witnesses, who saw Taylor going between the cars to make the coupling, that they impulsively cried out when they saw him and made expressions like these, "Watch that man! He will be killed if he goes in there!" "Those cars are going to hit like hell, and if that fellow goes in there he will get killed!" "That brakeman will be killed if he goes in there!"

The court instructed the jury over the objections of the defendant as follows:

1. "The Act of Congress fixes the standard height of loaded cars engaged in interstate commerce on standard gauge railroads at thirty-one and one-half inches and unloaded cars at thirty-four and one-half inches, measured perpendicularly from the level of the face of the rails to the centers of the drawbars, and this variation of three inches in height is intended to allow for the difference in height caused by loading the car to the full capacity, or by loading it partially, or by its being carried in the train when it is empty. Now, the law required that the two cars between which Taylor lost his life should be, when unloaded, of the equal and uniform height from the level of the face of the rails to the center of the drawbars of thirty-four and one-half inches, and, when loaded to the full capacity, should be of the uniform height of thirty-one and one-half inches. Now, if the plaintiff by a preponderance of the evidence shows a violation of this duty on the part of the defendant, then this is negligence; and if the proof by a preponderance also shows that this caused or contributed to the death of Taylor, then you should find for the plaintiff, unless it appears by a preponderance of the evidence that Taylor was wanting in ordinary care for his own safety, and that this want of care on Taylor's part for his own safety caused or contributed to the injury and death sued for, in which latter case you should find for the defendant."

"2. If there was the difference between the height of the center of the drawbars in the two cars in question, as indicated in the first instruction, then the question arises whether this difference caused or contributed to the injury and death of Taylor sued for. On that point, if such difference existed, and but for its existence the injury and death of Taylor would not have happened, then such difference is said in law to be an efficient proximate cause of Taylor's injury and death, although it may be true that other causes may have co-operated with this one in producing the injury and death of Taylor, and but for these other co-operating causes the injury and death of Taylor would not have ensued. But, if such difference in height of the center of the drawbars as aforesaid actually existed, yet, if the injury and death of Taylor would have ensued just the same as it did

without the existence of such difference in height of the center of the drawbars, then such difference in the height of the center of the drawbars is not in law an efficient proximate cause of the injury and death of Taylor."

The court refused to instruct the jury at the request of the defendant as follows:

"28. The court charges you that when one car is fully loaded and another car in the same train is only partially loaded, the law allows a variation of full three inches between the centers of the drawbars of such cars, without regard to the amount of the weight in the partially loaded car."

*Oscar L. Miles,* for appellant.

1. The testimony is wholly insufficient to justify the verdict. 67 Ark. 295. Declarations of by-standers at the time of the killing were admissible as part of the *res gestae.* 4 Elliott on Ev. 3030. To entitle a witness to be examined as an expert on a specific topic, he must, in the opinion of the court, have special acquaintance with the immediate line of inquiry. But a general knowledge of the department to which the specialty belongs is sufficient. Wharton, Cr. Ev. § 408. It was error to exclude the evidence of Witt and Walsh.

2. There is no law of Congress which prescribes the uniform and standard height of drawbars. The attempt of Congress to delegate this question to the American Railway Association was nullity. Safety Appliance Act, March 2, 1893.

3. It was error to give instruction No. 1. The interpretation of the judge was wrong and contrary to that made by the American Railway Association, by the Interstate Commerce Commission, and by every railroad man who testified. 71 Ark. 449. And to refuse the prayers for instructions asked by defendant curing this and other errors. 46 Ark. 555; 10 Rep. Int. Com. Com. (1896), on page 94.

4. The verdict is clearly excessive, clearly the result of prejudice and partiality.

*Sam R. Chew,* for appellee; *H. L. Fitzhugh,* of counsel.

1. This court, on the first appeal, practically settled all the questions of law and fact involved in this cause. 71 Ark. 445. It is true that Congress can not delegate its legislative

power, but it could and did have the power to confer upon any association, commission, etc., the power to designate to the Interstate Commerce Commission the standard for the height of drawbars. Act March 2, 1893, § 5; 2 L. R. A. 504; 192 U. S. 470, 498; 38 Minn. 281; 37 N. W. 782; 122 Fed. 30; 58 C. C. A. 346; 10 Wheat. 15.; 40 Fed. 402; 83 *Id.* 578; 82 *Id.* 592; 5 *Id.* 641; 4 Wheat. 316; 35 Ark. 69; 48 *Id.* 370; 59 *Id.* 513.

2. The United States court had no jurisdiction. 96 U. S. 199; 45 Fed. 819; 17 *Id.* 1; Moon on Removal of Cases, § 101, 102; 48 Fed. 340; 104 U. S. 135. No Federal question was raised by a simple assertion that an act of Congress must be construed. It must affirmatively appear that some right or interest given under a Federal statute is raised that will deprive State courts of their jurisdiction. 118 U. S. 110; 115 *Id.* 248.

3. There was no error in refusing appellant's offered evidence. They were mere statements of their opinions. 6 Thompson on Negl. § 7748; 65 Ark. 98; 24 Ark. 251.

It is the office of the jury to draw conclusions from the facts. 119 Mass. 276; 23 Ala. 469; 58 Am. Dec. 303; 18 Ala. 822; 40 Cal. 272; 1 Greenl. Ev. (14 Ed.), § 441 and foot notes. As to the so-called experts, see 36 Ark. 117; Rogers on Expert Testimony, § 26, p. 41.

4. The action is transitory. Act U. S. May 2, 1890; Mansf. Digest, § § 5225-6; 67 Ark. 295; 51 *Id.* 459; 62 *Id.* 254; 88 S. W. R. 1001; 145 U. S. 593; 21 D. C. 499; 65 Iowa, 727; 54 Am. Rep. 39; 13 N. Y. Sup. 540; 126 N. Y. 10; 13 L. R. A. 458; 56 Tenn. 852; 88 Va. 971; 15 L. R. A. 583; 49 Fed. 401; 100 Fed. 718; 40 C. C. A. 664.

5. It was appellant's duty to maintain the drawbars at even and uniform height. 12 Railroad Reports, 337; 46 S. E. 525; 194 U. S. 136; 135 Fed. Rep. 122; 71 Ark. 445.

6. No error in instructions given or refused. 71 Ark. 445; 60 *Id.* 550; 57 *Id.* 306; 48 *Id.* 460.

7. Verdict not excessive, see 60 Ark. 550; 57 *Id.* 306; 27 Tex. Civ. App. 279; 88 Tenn. 710; 51 S. W. 558.

BATTLE, J. Defendant asked for instructions as to contributory negligence of the plaintiff, if any, which were covered by instructions given by the court, and for that reason were properly refused.

Many instructions were asked by the defendant, which were properly refused for reasons that appear in the opinion delivered in this case when it was here the first time. *Neal* v. *St. Louis, Iron Mountain & Southern Railway Company*, 71 Ark. 445.

The evidence offered by the appellant, which the court refused to admit, were predictions of bystanders which were fully verified, as shown by the evidence. Their evidence could not have added any greater probative force to the verification.

Appellant insists that there is no law or act of Congress requiring railroads engaged in the carriage of interstate traffic to provide their cars with drawbars of standard height, and fixing a maximum variation from such standard height to be allowed between the drawbars of empty and loaded cars. The reason given for this contention is that Congress had no power to delegate to the American Railway Association the authority to legislate. But no such power was given to the American Railway Association. The act vested it with authority to designate the standard height of drawbars and the maximum variation from such standard height, and, when designated in the manner provided by law, provides that no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with such standard. The authority to designate is given, without the power to give the designation the force or effect of a law. That is derived entirely from the act. When the designation is made, the authority was exhausted. No power to change, amend, enforce, or control exists. The American Railway Association from first to last is without any legislative authority whatever. Such legislation has been frequently sustained by the courts. *Chicago & Northwestern R. Co.* v. *Dey*, 1 L. R. A. 744; *McWhorter* v. *Pensacola & A. R. Co.*, 2 L. R. A. 504; *State* v. *Chicago, M. & St. P. R. Co.*, 38 Minn. 281; *Dastervignes* v. *U. S.*, 122 Fed. 30; *Boyd* v. *Bryant*, 35 Ark. 69, 37 Am. Rep. 6.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

[A majority of the court was of the opinion that the cause should be affirmed. There were differences of opinion as to whether the court below erred in giving and refusing the instructions copied in the statement of facts. As there was no opinion

of a majority of the court upon this feature of the case, the discussion as to the instructions is omitted.  Reporter.]

### ON REHEARING.

Opinion delivered November 19, 1906.

HILL, C. J.  1.  Appellant calls attention to the matter of jurisdiction heretofore urged, which was fully considered by the court, but not mentioned in the opinion.

The suit was brought in Crawford Circuit Court, and on petition of defendant was removed to United States Circuit Court for the Western District of Arkansas, and a motion to remand to the State court was sustained by said United States Circuit Court.

The rule governing this matter is thus stated by the United States Supreme Court: "If the circuit court (of the United States) remands a cause, and the State court thereupon proceeds to final judgment, the action of the circuit court. is not reviewable on writ of error to such judgment.  A State court can not be held to have decided against a Federal right, when it is the circuit court (of the United States), and not the State court, which has denied its possession.  * * *  As under the statute a remanding order of the circuit court is not reviewable by that court on appeal or writ of error from or to that court, so it would seem to follow that it can not be reviewed on writ of error to a State court, the prohibition being that 'no appeal or writ of error from the decision of a circuit court remanding such cause shall be allowed.'  And it is entirely clear that a writ of error can not be maintained under section 709 in respect of such an order when the State court has rendered no decision against a Federal right but simply accepted the conclusion of the circuit court."  *Missouri Pacific Ry.* v. *Fitzgerald,* 160 U. S. 556; *Nelson* v. *Maloney,* 174· U. S. 164; *Telluride Power Trans. Co.* v. *R. G. W. Ry.,* 182 U. S. 569.

In view of the foregoing decisive settlement of the matter, the court did not consider that it was a question properly for its decision, and expressed no opinion on the right of removal, and. expresses none now.

Attention is called to the fact that there was a second petition for removal which the State court denied. If there had been any change in the removable nature of the suit after the cause was remanded, then a question addressing itself primarily to the State circuit court would have been presented, and its decision reviewable here, and the decision of this court reviewable on writ of error by the Supreme Court of the United States, but such was not the case.

The original complaint alleged: "That plaintiff's cause of action arises under an act of Congress, and in the trial of said cause there will be a controversy as to the construction of said act of Congress," and it then proceeded to allege the death of the deceased "on account of said wrongful and improper equipment of said two cars [which he as brakeman was coupling], and the negligent, defective and dangerous condition of same; that said cars were wrongfully and improperly equipped, and in a dangerous and defective condition in this: Said cars were not equipped with automatic or safety couplers, the drawbars on said cars were not even, uniform or standard height, as required by the laws of Congress." After the remand of the cause to the State circuit court, the plaintiff amended the first clause above quoted so as to make, it read as follows: "That plaintiff's cause of action arises under an act of Congress, and in the trial of said cause there will be a controversy as to the construction of said act of Congress, and that in the trial of this cause said act of Congress will have to be construed by the court, and that there will be a controversy as to the construction of said act of Congress." Appellant says: "After the cause was remanded from the United States court at Fort Smith to the Crawford Circuit Court for trial, then the plaintiff amended his complaint, and charged that his cause of action arose under the *safety appliance act of Congress,* and that it would be necessary for the court to construe the *safety appliance act of Congress* during the further progress of the cause." All of this is true, but the complaint before amendment showed exactly the same thing, and the amendment was trivial, and neither added to nor took away anything. Whether it was a Federal question was just as clearly in the complaint before as it was after the amendment, and the Federal circuit court de-

cided it was not a Federal question, and that decision is not reviewable here. When an amendment transforms a nonremovable case into a removable one, then the defendant may have and sustain a second petition for removal. Moon on Removal of Cause, § 157; *Powers* v. *C. & O. Ry.*, 169 U. S. 92. But, as indicated, this case fell far away from that rule.

2. It is contended that the court erred in holding the facts sufficient to sustain the verdict. The facts on the former trial are set out in 71 Ark. 445, and the facts in the last trial (and there were some differences), are set out in the statement of the facts prepared by Mr. Justice BATTLE, and it would be useless to review them now. The court is satisfied that they are sufficient to sustain the verdict; and while there is a difference of opinion among the judges as to the instructions, there is no difference on this question.

3. It is insisted that the former decision is not binding as *res judicata* on this appeal. As to the facts, where they are not identical, that is true; but the law governing the construction of the act of Congress is invoked on the facts formerly presented and on the facts as now presented, and the former construction is the law of this case, and can not be reopened on this appeal. All matters heretofore and now presented have been considered, and the motion is denied.