## BULLOCK v. BILLHEIMER, AUDITOR, ET AL.

[No. 21,656.   Filed April 6, 1911.]

1. CORPORATIONS.—*Associations.—Indiana Historical Society.—Creation.—Purposes.*—The Indiana Historical Society is a private corporation created by the act of 1831 (Acts 1831 p. 62), and its objects are not stated further than the name implies.   p. 434.

2. CORPORATIONS.—*Associations.—Indiana State Board of Agriculture.—Creation.—Purpose.*—The Indiana State Board of Agriculture is a private corporation created by the act of 1851 (Acts 1851 p. 6) for the purpose of "deliberation and consultation as to the wants, prospects and conditions of the agricultural interests throughout the State."   p. 434.

3. CORPORATIONS.—*Private.—Creation of.—Constitutional Law.*—The legislature under the Constitution of 1816 had the power to create private corporations.   p. 434.

4. CORPORATIONS.—*Purdue University.—Objects.*—"The Trustees of Purdue University," a corporation created by section 4 of the act of 1869 (Acts 1869 [s. s.] p. 24, §6850 Burns 1908) for the purpose of holding and managing the funds received from the federal government, is required to conduct an agricultural experiment station and to conduct original researches concerning plant and animal life.   p. 434.

5. CORPORATIONS.—*Indiana Horticultural Society.—Purposes.*—The Indiana Horticultural Society was organized under the act of 1875 (Acts 1875 p. 81, §§4274-4276 Burns 1908) and its object is to collect and disseminate information relative to fruits and the enemies of the growth thereof.   p. 435.

6. CORPORATIONS.—*Indiana Academy of Science.—Purposes.*—The Indiana Academy of Science, incorporated in 1887, was formed for scientific research and the diffusion of knowledge concerning the various departments of science.   p. 436.

7. CORPORATIONS.—*Indiana Corn Growers Association.—Indiana Livestock Breeders Association.—Purposes.*—The Indiana Corn Growers Association and the Indiana Livestock Breeders Association were organized in 1907 under the act of 1907 (Acts 1907 p. 570, §§3239-3241 Burns 1908), the purpose of the former being to improve and develop varieties of corn, encourage cultivation thereof, and to advance the interests of corn growing, and the purpose of the latter being to promote live stock breeding and feeding and for the general improvement of the stock of the State.   p. 436.

8. STATES.—*Appropriations.—Expenditures.—Private Corporations.—Purdue University.*—Section three of the act of 1909 (Acts 1909

p. 403), appropriating money to Purdue University for certain experiments, such experiments to be conducted along lines "agreed upon by the director of the said experiment station of said university, and an advisory committee of five persons, one person to be appointed by each" of five named agricultural organizations of the State, does not authorize the expenditure of such money for private profit, such money being expended only by Purdue University for public purposes, and the acts of such committee being purely advisory. pp. 436, 438.

9. Schools.—*Purdue University.—Indiana Historical Society.—Indiana Academy of Science.—Constitutional Law.*—Purdue University, the Indiana Historical Society and the Indiana Academy of Science, were formed pursuant to article 8, §1, of the Constitution, and constitute parts of the educational system of the State; and statutes appropriating money thereto do not violate article 1, §23, of the Constitution, forbidding the granting of special privileges, nor article 4, §23, forbidding the enacting of special laws where general ones can be made applicable. p. 437.

10. Constitutional Law. — *Public Power.—Delegation of.—Accountability.*—Public or political power cannot be delegated to private persons or corporations where no power of supervision is retained. p. 438.

11. Constitutional Law.—*Schools.—Instrumentalities.—Legislative Questions.*—The method of carrying out article 8, §1, of the Constitution, requiring the General Assembly to "encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement, and to provide, by law, for a general and uniform system of common schools," is a question for the legislature. p. 438.

12. Constitutional Law.—*Aiding Private Corporations.—Public Purposes.—Appropriations.* — The legislature may appropriate money to a private corporation to be expended for a public use. p. 440.

13. Statutes.—*Enacting Clauses.—Sufficiency.*—The enacting clause of the act of 1909 (Acts 1909 p. 403) reading: "Be it enacted by the general assembly of the State of Indiana," is sufficient. p. 440.

14. Statutes. —*Title.—Sufficiency.—Poultry.—Horticulture.* — The title to the act of 1909 (Acts 1909 p. 403), providing, among other things, for an investigation of the "production of farm products," sufficiently covers provisions within the purview of the act, relating to horticulture and poultry. p. 440.

15. Schools. — *Purdue University. — Experiment Stations. — By-Products.—Incidents.*—The legislature has the power to appropriate money for the use of Purdue University in conducting its experiment station; and as incidents thereof such university has

the right to execute contracts for supplies, and to sell the products of the operation of such station, such matters being necessary incidents of an experiment station.  p. 441.

From Superior Court of Marion County (78,206); *Vinson Carter*, Judge.

Suit by Henry W. Bullock against John C. Billheimer, as Auditor of State, and others. From a judgment for defendants, plaintiff appeals.  *Affirmed.*

*Henry W. Bullock, in pro. per.* for appellant.

*James Bingham*, Attorney-General, *Addison C. Harris, H. H. Hammer*, and *Smith, Duncan, Hornbrook & Smith*, for appellees.

MYERS, C. J.—Appellant, as a taxpayer, instituted a suit in the Superior Court of Marion County against the Auditor of State and the Treasurer of State, the Indiana State Board of Agriculture, the Indiana Corn Growers Association, the Indiana Livestock Breeders Association, the Indiana Horticultural Society, the Indiana Historical Society, the Fanciers Association of Indiana, the State Dairymens Association, the Indiana Academy of Science, and the Board of Trustees of Purdue University, his complaint consisting of three paragraphs, to enjoin the Auditor of State from drawing warrants on the Treasurer of State, and the latter from paying such warrants to the board of trustees of Purdue University, under the provisions of the act of March 8, 1909 (Acts 1909 p. 403). Upon answers of general denial, trial was had and judgment rendered for appellees.

The error here assigned is in overruling the motion for a new trial, the grounds of which were that the decision of the court is not sustained by sufficient evidence, and is contrary to law.

The first paragraph of complaint alleges that the board of trustees of Purdue University, together with the societies, associations and boards named, have charge of Purdue University; that the Indiana State Board of Agriculture,

the Indiana Horticultural Society, the Indiana Corn Growers Association, the State Dairymens Association, the Indiana Livestock Breeders Association and the Fanciers Association of Indiana are private corporations; that the board of trustees of Purdue University is preparing to present to the Auditor of State a claim for $75,000, under the provisions of the appropriation act of 1909, *supra,* and that on presentation of such warrant said treasurer threatens to pay it; that its payment would be unlawful, in that said act is invalid, because it has no enacting clause; that the act is unconstitutional, in that it attempts to direct the expenditure of public money through the agency of the Indiana Corn Growers Association, the State Dairymens Association, the Indiana Livestock Breeders Association, the Fanciers Association of Indiana and the Indiana Horticultural Society; that it is void because the power sought to be conferred by the act on said private corporations is not conferred on them by their charters, and said act seeks to confer special privileges and immunities upon certain corporations, in violation of article 1, §23, of the state Constitution, and because the title of such act does not embrace the subjects of horticulture and poultry; that these five associations are preparing to, and will appoint the advisory board to direct the expenditure of the $75,000, and will interfere with the director of the experiment station of Purdue University, without authority of law or right. The prayer is that these associations be enjoined from appointing such advisory board, and that the payment of the $75,000 be enjoined.

The second paragraph is similar to the first, except that it alleges that defendants, other than the Auditor of State, the Treasurer of State and The Trustees of Purdue University, are private corporations, chartered and created by special acts of the General Assembly, and without authority to perform any public service; that said boards, societies and associations are preparing claims for presentation to the Auditor of State for payment out of the public

treasury of various specified amounts appropriated to each, and that said auditor will issue the warrants, and said treasurer will pay them, unless enjoined; that they are illegal, in that said societies are private corporations, performing no public service under direction of any public officer appointed by any legally constituted authority; that the Constitution prohibits state aid to private corporations, and the conferring of special privileges on any citizen or class of citizens, not enjoyed by all, and that these societies, boards and associations were created by special acts of the legislature. The prayer is for an injunction prohibiting the payment of such claims.

The third paragraph is similar in its allegations to the first, except that it alleges that the board of trustees of Purdue University is controlling the affairs of the university, including the experiment station connected therewith; that the other defendants are private corporations, and are attempting to direct and control the affairs of said university, without authority of law, by appointing the members of the board of trustees and the advisory committee of the university, and directing the expenditure of money, without authority, or without being accountable to the public, or without deriving authority from any department of the state government; that the act of 1909, *supra*, carries an annual appropriation of $75,000 to the experiment station of Purdue University, and the board of trustees and the advisory committee are preparing to expend the appropriation for the purpose of manufacture, purchase, sale, trade and traffic for gain, of farm and dairy products, through purchasing and sales agents throughout the State, in connection with private persons and citizens of this State, all without authority of law, for the reason that the act is void, in that such act, being an attempt to amend the act of 1905 (Acts 1905 p. 142, §§6864–6866 Burns 1908), has no enacting clause; that said act pretends to place the expenditure of public money in the hands and under the direction of private

corporations; that it attempts to confer power on private corporations to appoint advisory boards to direct the work of a state institution; that it is special legislation, and confers special privileges and immunities on certain persons; that it provides aid and support to private corporations from public funds, and provides for the expenditure of public funds for private purposes, and that the purposes included are broader than the title of the act. The prayer is for an injunction as in the first paragraph.

The only allegation of the first paragraph as to the Indiana State Board of Agriculture is that it is a private corporation, and that the Treasurer of State will pay the appropriation. In the second paragraph the sole allegations are that it is a private corporation created by special charter, and that it will, unless enjoined, present a claim for payment, and that the Treasurer of State will pay out of the public funds $10,000. In the third paragraph it is alleged that it is a private corporation incorporated under a special act of the legislature, and it, with the other defendant societies, boards and associations, is attempting to direct and control the affairs of Purdue University, in the manner shown in the abstract of the complaint.

As to the second paragraph, we infer that the attack is upon the provisions of the general appropriation bill of 1909 (Acts 1909 p. 470), and that the specific appropriations are to the State Dairymens Association and the Indiana Livestock Breeders Association, under the act of 1907 (Acts 1907 p. 570, §§3239-3241 Burns 1908), as the amounts specified in the paragraph of complaint correspond to the amounts appropriated to the use of the various associations and boards mentioned. In appellant's brief, however, no reference is made to the specific appropriation act of 1907, *supra*, in favor of the Indiana Corn Growers Association or the State Dairymens Association, or the general appropriation act of 1909, except the general claim that these are all private cor-

porations created by special acts of the General Assembly, and that any appropriation to them from the public funds is illegal.

The Indiana Historical Society was created by a special act of the legislature on January 10, 1831 (Acts 1831 p. 62).

1. Its objects are not stated, further than the name implies. The Indiana State Board of Agriculture was created by a special act February 14, 1851 (Acts 1851 p. 6), under the title "An act for the encouragement of agriculture," and by the body of the act its objects are

2. declared to be "for deliberation and consultation as to the wants, prospects and conditions of the agricultural interests throughout the State." By the incorporating act, $1,000 was appropriated for the use of the board, and a report to the General Assembly was required annually. Power was given this board by section nine of said act to hold state fairs, and to have the entire control thereof, to fix premiums "embracing any article of science or art," or such as it saw was "calculated to advance the interests of the people of the State." The ordinary expenses of the board, including the necessary personal expenses of the members for two meetings in a year, were to be paid from the state treasury. This association has been held to be a private corporation. *Downing* v. *Indiana State Board, etc.* (1891), 129 Ind. 443.

3. The same thing, we think, must be held to be true as to the Indiana Historical Society, but both were created under the Constitution of 1816, which had no inhibition against creating corporations by special acts.

4. Purdue University was incorporated pursuant to the provisions of an act of congress of July 2, 1862 (2 Fed. Stat. Ann. p. 850, 12 Stat. 503), and an act of congress of April 14, 1864, with the amendment of July 23, 1866 (2 Fed. Stat. Ann. p. 852, 14 Stat. 208). By an act of March 2, 1887 (1 Fed. Stat. Ann. p. 9, 24 Stat. 440), "an experiment station" was authorized, "to conduct original researches or verify experiments on the physiology

of plants and animals," involving foods, soil, animal diseases, dairy products, etc. Avail of the federal donation was made by an act of the General Assembly which went into force May 6, 1869 (Acts 1869 [s. s.] p. 24, §§6847–6850, 6852, 6853 Burns 1908, §§4665–4670 R. S. 1881). By the fourth section of this act (§6850, *supra*) it is provided that "the corporate name of the trustees of the Indiana Agricultural College shall be 'The Trustees of Purdue University,' and they shall take in charge, have, hold, possess, and manage, all and singular, the property and moneys comprehended in said donations, as also the fund derived from the sale of the land scrip donated under said acts of congress, and the increase thereof, and all moneys or other property which may hereafter at any time be donated to and for the use of said institution." This act, in effect, simply changed the name of the corporation from "The Trustees of the Indiana Agricultural College," organized under the act of March 6, 1865 (Acts 1865 p. 106, §2, §6845 Burns 1908), to "The Trustees of Purdue University." The Indiana Agricultural College was essentially a state institution, for the purpose of accepting and making avail of the acts of congress, of which "The Trustees of Purdue University" is the successor.

The Indiana Horticultural Society was incorporated in 1875, pursuant to the provisions of an act of the General Assembly approved March 10, 1875 (Acts 1875 p. 81, §§4274–4276 Burns 1908). The objects of the society are to "collect, condense, and collate information relative to varieties of fruits, and dispense the same among the people;" also to collect a library, and specimens of insects and birds harmful to horticulture, specimens of horticultural industry, and representations thereof, subject to the inspection and examination of the people of the State. It provides for a report to the Governor of the conditions of horticulture throughout the State, and of the money received from the State and other sources, and the disposition thereof.

The Indiana Academy of Science was organized December 21, 1887, under what act we are not advised (but see Acts 1887 p. 41, §1, subd. 1), and its objects are found to be "scientific research and the diffusion of knowledge concerning the various departments of science."

The Indiana Corn Growers Association and the Indiana Livestock Breeders Association were organized in 1907 under the act of 1907 (Acts 1907 p. 570, §§3239-3241 Burns 1908). The object of the former is the improvement and development of varieties of corn, to encourage more careful cultivation, and, in other named respects, to advance the interest of corn growing. The Indiana Livestock Breeders Association was incorporated to promote livestock breeding, and the feeding and general improvement of the stock of the State. There are nominal annual dues of members in each of these two associations, but no obligations.

No question is here made as to the Fanciers Association of Indiana, except the allegation that it is a private corporation, and, with the other associations, controls Purdue University.

There is no evidence that any of these defendant associations or boards have, or claim to have, any thing to do with the management of the university, except that the advisory committees of the five associations named in the act of 1909 (Acts 1909 p. 403, §3), upon call of the director of the experiment station, meet with him two or three times a year to discuss the general outline of the experiments and investigations. Such meetings are purely advisory. Such boards do not direct the work, nor the expenditure of any money, nor do they handle any money. These corporations are not organized for pecuniary profit, and have no stock, but each and all are organized for public purposes, and are of a public character.

The Trustees of Purdue University, the Indiana Historical

9. Society and the Indiana Academy of Science are parts of the educational system of the State. The other bodies are adjuncts and accessories of its educational system, as applied to practical science and economics through the university. The acts under which they are organized confer no benefits or privileges upon any citizen or class of citizens, which, upon the same terms, are not open to every citizen of the State.

The prohibition of article 1, §23, of the Constitution does not apply, but these corporations fall within article 4, §23, for the reason that it is perfectly apparent that a general law could not be made applicable to such cases, because but one corporation of each class is necessary, and it is manifestly inexpedient that there should be more than one association of the particular kind, of which all persons may become members. The laws are general in one sense: that is, that until the particular associations are formed they are open to all citizens to join in their formation, and all citizens who desire to do so may become members on the same terms. The fact that no other like corporations may be formed does not destroy the general and public character of the acts; because they are open to all citizens to become members at any time. "The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes." *Budd* v. *Hancock* (1901), 66 N. J. L. 133, 48 Atl. 1023.

The franchises granted are of a public nature, in the interest of education. The laws under which these societies were organized were passed by the legislature pursuant to the authority given by article 8, §1, of the Constitution, as a part of the educational system of the State and under the direct mandate of that section, and are in no sense in conflict with article 1, §23, or article 4, §§22, 23, of the Constitution.

We are quite in accord with appellant's position that public moneys can be applied only for public purposes, and not directly or indirectly for the benefit of private persons or private corporations.

We are also in accord with appellant upon the proposition that political or public power cannot be delegated to private persons or corporations over whom or which there is no supervision and no liability to account, nor can others be appointed to discharge the duties of public officers. *State, ex rel.,* v. *Goldthait* (1909), 172 Ind. 210.

No authority is claimed by, nor given to, either of these corporations, to exercise political power, or to administer public funds. The controlling power of Purdue University is in the trustees. The advisory committees of the five named associations are just what they purport to be—advisory; for both the director of the experiment station and the advisory committees are governed and controlled by the trustees.

By article 8, §1, of the Constitution it is made the duty of the General Assembly to "encourage, by all suitable means, moral, intellectual, scientific, and agricultural improvement," and it has been held that it is the province of the legislature to determine how, and by what instrumentalities the common school system shall be administered. *State, ex rel.,* v. *Ogan* (1902), 159 Ind. 119.

Upon the same analogy, the legislature may determine how, and by what instrumentalities "scientific and agricultural improvement" may be made. It is even less hampered in this respect than it is with respect to the school system, which is required to be "general and uniform," and the provision of these advisory bodies does not in any respect curtail the general and controlling administration, or limit, specialize or restrict the uniformity of operation or the benefit to the people at large. The act of 1909, *supra,* is not ineffective or unconstitutional by reason of the provision for an advisory committee to act

with the director of the experiment station. If said committee performs any duty it is a public one, in which the public is interested. It performs no increased functions of a corporate character, for the reason that its duty ceases with its advice. It is no objection to a law that persons may be elected to advise as to the performance of a duty in which the public is interested, or that the mode of exercising the power is referred to those who may be affected by its operation. *Overshiner* v. *State* (1901), 156 Ind. 187, 51 L. R. A. 748, 83 Am. St. 187; *Hovey* v. *State, ex rel.* (1889), 119 Ind. 395, 401; *Wilkins* v. *State* (1888), 113 Ind. 514; *Williamson* v. *Board, etc.* (1896), 23 Colo. 87, 46 Pac. 117; *Slack* v. *Maysville, etc., R. Co.* (1852), 13 B. Mon. 1; *State* v. *Sullivan* (1897), 67 Minn. 379, 69 N. W. 1094; *State, ex rel.,* v. *McMahon* (1896), 65 Minn. 453, 68 N. W. 77; *State* v. *Corbett* (1894), 57 Minn. 345, 59 N. W. 317, 24 L. R. A. 498; *In re O'Neill* (1905), 41 Wash. 174, 83 Pac. 104, 3 L. R. A. (N. S.) 558; *Northern Railroad* v. *Manchester, etc., Railroad* (1891), 66 N. H. 560, 31 Atl. 17; *St. Louis, etc., R. Co.* v. *Neal* (1896), 83 Ark. 591, 98 S. W. 958; *Columbia, etc., Levee Co.* v. *Meier* (1866), 39 Mo. 53.

The act does not violate article 1, §23, *supra*, forbidding the granting of special privileges by authorizing these associations to appoint an advisory committee. The right to appoint is a duty, not a privilege, and is exercised, not for the benefit of the association, or the individual members composing it, but for the public. It is general in its objects and purposes. These associations are educational and *quasi*-public corporations, organized for the public benefit. *Downing* v. *Indiana State Board, etc., supra; Kent County, etc., Soc.* v. *Houseman* (1890), 81 Mich. 609, 46 N. W. 15; *Arnett* v. *State, ex rel.* (1907), 168 Ind. 180; *Isenhour* v. *State* (1901), 157 Ind. 517, 87 Am. St. 228; *Overshiner* v. *State, supra; Ferner* v. *State* (1898), 151 Ind. 247.

It is also urged that the appropriations to the various associations under the act of 1909, *supra*, are invalid, as

providing aid to private. corporations. Bearing in 12. mind that none of these associations is organized for pecuniary profit, but for public purposes, and looking to their character and purposes, it is manifest that the uses are public, and the test is not the means employed, but the use, the object sought; and with this in view, unless some provision of the Constitution may be pointed to prohibiting the agencies employed, we must assume that, even if they could be regarded as private corporations, the legislature is the judge of the agencies it will employ for public ends and purposes. *Downing* v. *Indiana State Board, etc.,* *supra; City of Indianapolis* v. *Indianapolis Home, etc.* (1875), 50 Ind. 215; *Boehm* v. *Hertz* (1899), 182 Ill. 154, 54 N. E. 973, 48 L. R. A. 575; *Daggett* v. *Colgan* (1891), 92 Cal. 53, 28 Pac. 51, 27 Am St. 95, 14 L. R. A. 474 and notes; *Speer* v. *School Directors, etc.* (1864), 50 Pa. St. 150; *Sharpless* v. *Mayor, etc.* (1853), 21 Pa. St. 147, 59 Am. Dec. 759; *Visitors, etc.,* v. *State* (1859), 15 Md. 330; *Mayor, etc.,* v. *Howard* (1860), 15 Md. 376; *Regents, etc.,* v. *Williams* (1838), 9 Gill & J. (Md.) 365, 31 Am. Dec. 72.

We are not able to agree with counsel as to there being no enacting clause in the act. It is enacted with the 13. formalities usually employed, and in the manner provided by article 4, §1, of the Constitution.

It is said that the title is not broad enough to include horticulture and poultry raising. The title embraces the subjects of "farm products." Horticulture is a branch 14. of agriculture and agricultural production. *Reeves* v. *Hyde* (1888), 77 Cal. 397, 19 Pac. 685; *District of Columbia* v. *Oyster* (1885), 4 Mackey 285, 54 Am. Rep. 275; Webster's Dictionary, titles, "Agriculture," "Horticulture." Poultry is an important farm product, and clearly germane to, if not embraced in, the subject of "farm products," which is sufficient to bring it within the title. *Knight & Jillson Co.* v. *Miller* (1909), 172 Ind. 27; *State* v. *Barrett* (1909), 172 Ind. 169; *Mull* v. *Indianapolis, etc., Traction Co.*

(1907), 169 Ind. 214; *Hargis* v. *Board, etc.* (1905), 165 Ind. 194; *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165; *Kerr* v. *Perry School Tp.* (1904), 162 Ind. 310; *Baltimore, etc., R. Co.* v. *Town of Whiting* (1903), 161 Ind. 228; *Isenhour* v. *State, supra; Clarke* v. *Darr* (1901), 156 Ind. 692; *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100; *Chicago, etc., R. Co.* v. *State, ex rel.* (1899), 153 Ind. 134; *State* v. *Arnold* (1895), 140 Ind. 628; *Benson* v. *Christian* (1891), 129 Ind. 535.

It appears from the evidence that in conducting the experiment station, cows and milk have to be purchased, and in order to obtain a sufficient quantity of milk to conduct the experiments, it has to be obtained by contracts with farmers for a definite period of time. The products of the milk in conducting the experiments are butter and cheese, and as incidental to their production, but not as the object, these products are sold. The same thing is true as to experiments in fattening stock and in cultivating lands, but they are mere incidents of the main objects, and are in no sense commercial or business enterprises. It would be a shameful waste if the products of the experiments along these lines, as necessary incidents in the experiments, were to be destroyed. The act must receive a reasonable construction in view of its objects and purposes, and is not open to the objection that the experiment station is a commercial institution.

No error is disclosed, and the judgment is affirmed.