THEODORE L. SENDAK, ET AL. *v.* TRUSTEES OF
INDIANA UNIVERSITY

[No. 969S211. Filed July 23, 1970. No petition for rehearing filed.]

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, *Walter E. Bravard, Jr.,* Deputy Attorney General, for appellants.

*G. R. Redding, Stephen W. Terry, Jr., and, Baker & Daniels,* of counsel, of Indianapolis, for appellee.

ARTERBURN, J.—There is only one issue in this case, namely, may the Trustees of Indiana University receive gifts, devises and bequests from private donors and testators and as trustees, hold, invest and reinvest such property in corporate stock? The appellant, the Attorney General of Indiana, contends that the receipt of such corporate stock and the reinvestment of such stocks is violative of Art. 11, § 12 of the Constitution of the State of Indiana, which states that the State of Indiana may not "become a stockholder in any corporation."

This appeal comes to us from a summary judgment entered in favor of the appellee, thereby authorizing it to make and hold investments in corporate stock of private corporations out of money received by it from private sources, as indicated above.

The facts are undisputed. From time to time, during the University's more than one hundred years of existence, the appellee has received and accepted and now holds and administers property transferred to it in trust by private gifts, bequests and devises. Such privately donated property is held

by the appellee for educational and charitable purposes, such as for the benefit and the use of the students, faculty and various activities of Indiana University, as specified in the terms and conditions under which the gifts are made. The property is in many cases given for specified purposes, the corpus to be preserved, and in other cases the corpus to be expended for specified purposes in the educational field, such as endowing academic chairs, promoting research and offering educational help and opportunities to students and the faculty at Indiana University. In some cases this property so received includes common and preferred stock of commercial and industrial corporations. None of this property has been derived from taxation. Thus we have here involved *only* funds derived from private gifts, bequests, and devises. Funds derived from public source by taxation or otherwise are not involved.

The Constitution of the State of Indiana, Art. 11, § 12, around which this controversy revolves, reads as follows:

> "The State shall not be a stockholder in any bank, after the expiration of the present bank charter; nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation; nor shall the State hereafter become a stockholder in any corporation or association."

Historically, we recognize that this provision was placed in our Constitution to prevent the use of State tax money to support private enterprise and particularly public improvements financed through private corporations, such as railroads and canals, which brought upon the State such financial disaster at the time of the promotion of such public improvements. Debates In Indiana Convention 1850, pp. 651-652, 152 ALR 495.

The legislature of the State of Indiana has officially recognized Indiana University as a state university, and at the same time by Act has made the Board of Trustees, under the style of "Trustees of Indiana University," a body politic, which may sue and be sued and with authority to manage

the state university. Burns' Ind. Stat. Anno. § 28-5302. The Board of Trustees has in addition been given the special statutory power "to accept gifts, bequests and devises of personal and real property for the maintenance, use and benefit of Indiana University . . . or to be administered for other public charitable purposes for the benefit or use of the students of any such educational institutions." Burns' Ind. Stat. Anno. § 28-5712. Further, Burns' Ind. Stat. Anno. § 28-5713 gives the trustees the right to ". . . administer and use any property transferred to them by gift, bequest or devise, with such terms and conditions, and with such obligations, liability and burdens as are imposed thereon . . ."

Under this legislation and related legislation it appears clear to us that the Board of Trustees of Indiana University acts in a dual capacity, first as directors and managers of the University operation; second, as trustees of private trusts created by private donors. In the first capacity it is a corporate body politic governing Indiana University, as fixed by the statute. In the second capacity it has the common law duties and privileges of a private trustee to administer funds which the statute authorizes it to accept on terms and conditions fixed by private donors. The legislature contemplated that there would be private funds placed in trust with the trustees for certain specific purposes and for the benefit of those connected with the University and the University's activities.

The property with which we are concerned was not given to the State of Indiana. Thus the State of Indiana is not the owner of the gifts from the private donors to the trustees. They were given in trust upon certain limitations and specifications. To say that they became the property of the State of Indiana would be a violation of the trust imposed upon the trustees pursuant to the statute under which they are authorized to accept such funds. The trustees have a duty and obligation, as trustees have in a private trust, to use good judgment and prudence in the management

of the funds entrusted to them and to keep them properly and prudently invested, with due regard to enhancing the income, as far as the same may be reasonably and safely done. The mere fact that the trustees happen to act in another capacity and are a corporate body affected with a public interest does not prohibit them from also acting as trustees of private funds, particularly in this case, where the statute specifically authorizes such activity. It is true that the property here involved has certain public or charitable purposes, but that does not make the State of Indiana the owner of such funds any more than the State of Indiana is the owner of funds placed in trust with some other private trustee for the same purposes, namely, educational purposes at Indiana University.

A case decisive of the question here in our judgment is that of the United States Supreme Court in *The Trustees for Vincennes University* v. *The State of Indiana* (1852), 55 U. S. 268, 14 How. 268, 14 L. Ed. 416. In that case Congress had previously set aside three townships of land for the support of the seminary of learning in the Indiana Territory. The Ordinance of 1787 provided: "Religion, morality and knowledge being necessary to good government and to the happiness of mankind, schools and means of education, shall forever be encouraged." Pursuant to this mandate in 1806, the Indiana Territorial Legislature at its first session passed an act to incorporate a university in the Indiana Territory "to be called and known by the name and style of Vincennes University." Vincennes University was the first university in the State established by state authority and thus became entitled to the land authorized by Congress for educational purposes. However, at a later date the legislature, in establishing Indiana University, authorized the sale of what remained of the townships, the funds to be used for the benefit of Indiana University. Thereafter the Board of Trustees of Vincennes University brought suit to establish its right to these congressional school lands and carried the appeal to the United States Su-

preme Court. That court held that the land involved, although coming from the United States Government, was in fact a trust fund given to Vincennes University for specified educational purposes, and the land was not owned by the State of Indiana and could not be disposed of by the State of Indiana for the benefit of Indiana University. The United States Supreme Court noted:

> ". . . The corporators were vested with all the necessary powers to carry out the trust. And for the purposes of the trust, the title became vested in them, as soon as they acquired a capacity to receive it. This corporation had no political powers, and could in no legal sense be considered as officers of the State."

In our opinion, the case before us is even stronger than that involving Vincennes University, since it involves purely private funds and not congressional school land.

The appellants, however, urge that Indiana University is a part of the State Government and is bound by the constitutional provision against ownership of corporate stock, and points out that in the decision in *The Trustees for Vincennes University, supra,* the court noted that Vincennes University is a "private" corporation. Whether a university is referred to as an agency, instrumentality, or public corporation of the State is not decisive of the question here, and we hesitate to engage in a semantical discussion which would, as in most instances, result in no satisfactory solution to the problem. We do point out, however, that in the case of *The Trustees for Vincennes University, supra,* although Vincennes University is referred to as a private corporation, the opinion quotes Justice Story as saying:

> "Public corporations are generally esteemed such as exist for public political purposes only, such as towns, cities, parishes and counties. . . ."

and points out that the officers of the Vincennes University are not state officials or officers. It is obvious that the term

"public" corporation, as distinguished from "private" corporation, as used in that opinion, is synonymous with "political." With such limited meaning given to "public" corporation, as distinguished from "private" corporation, we find no difficulty with the opinion. Without doubt, Vincennes University has a *quasi* public function and in a general sense and under present-day connotations, it may be referred to as a "public" corporation. We find that Indiana University likewise has been denominated a "private" corporation, as distinguished from a "public" corporation in the limited sense. In *State ex rel. Robinson* v. *Carr* (1887), 111 Ind. 335, 12 N. E. 318, which involved the loan of University funds at a fixed rate of interests, this court stated:

> "The university, (Indiana University) although established by public law, and endowed and supported by the State, is not a public corporation in a technical sense.
> * * * * * * *
> ". . . The corporation thus organized has none of the essential characteristics of a public corporation. It is not a municipal corporation.
> * * * * * * *
> ". . . The legal status of the State University being that of a technically private, or, at most, *quasi* public corporation, the university fund, of which it is the sole beneficiary, is, therefore, not a public fund, within the meaning of the law."[1]

That opinion goes on to say that a public corporation is one created for political purposes, as distinguished from a private corporation created to perform public duties in the educational field. Be that as it may, whether or not we agree with the connotation given to the term "public" corporation

1. In *State ex rel. Robinson* v. *Carr* (1888), 111 Ind. 335, 12 N.E. 318 the following classification of corporations is made:
"There are three classes of corporations, to wit, public municipal corporations, the object of which is to promote public interest; corporations technically private but of a *quasi* public character, having in view some public enterprise in which the public interests are involved, and corporations strictly private."

at the time the opinions in question were written, we find that Vincennes University and Indiana University fall within the same category. They are both instrumentalities of the State and an integral part of the state's public school system, whether we call the corporations *quasi* public, affected with the public interest, or public corporations in another sense and under a more current or modern meaning. See also the cases of *Russell* v. *Trustees of Purdue University* (1929), 201 Ind. 367, 168 N. E. 529 and *Bullock* v. *Billheimer* (1911), 175 Ind. 428, 94 N. E. 763.

It is urged that the majority opinion has a "most disconcerting aspect," since there is no limit on the percentage of shares which the University may hold from donated funds. A simple answer to this is that the trustees are bound, as any trustees, to use prudent judgment in the investment of trust funds. Secondly, the legislature may place a fixed limit, as it sees fit.

Thus it appears to us that the law applicable to the funds involved in the *Vincennes University* case, *supra*, should likewise be applicable to the funds involved in this case with reference to the board of Trustees of Indiana University.

The judgment is affirmed.

Hunter, C.J., and Givan, J., concur; Jackson, J., concurs in result; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—I dissent from the majority opinion which holds that the Indiana Constitution permits appellee, the Board of Trustees of Indiana University, to maintain and invest donations from private sources in corporate stock.

Article 11, § 12, of the Indiana Constitution says:

"The state shall not be a stockholder in any bank, after the expiration of the present bank charter; nor shall the credit of the state ever be given, or loaned, in aid of any

person, association or corporation; *nor shall the state hereafter become a stockholder in any corporation or association.* (Emphasis added.)

The sole question then is whether the Board of Trustees of Indiana University is "the State" within the meaning of that article. I believe the Board is an integral part of the State and is thus prohibited by Art. 11, § 12, from maintaining, investing and re-investing its property in corporate stock.

Indiana University is one of only four "state universities." 1 R. S. 1852, ch. 114, § 1, being Burns Ind. Stat. Ann. § 28-5301. The appellee, the Board of Trustees of Indiana University is the governing body of the University with the power to operate the university, expend its income, and hire faculty and staff. All of these powers are conferred by State statute. 1 R. S. 1852, ch. 114, § 2, as amended, being Burns Ind. Stat. Ann. § 28-5302. The method of selection and the term of office of trustees is regulated by statute. Acts 1891, ch. 53, § 1, being Burns Ind. Stat. Ann. § 28-5303.

Indiana University is an "agency of the State" within the meaning of the Budget Agency Act, Acts 1961, ch. 123, §§ 1 through 15, being Burns Ind. Stat. Ann. §§ 60-401 through 60-415. This government agency reviews and reports on the budget proposed for the operation of the university. The General Assembly has the ultimate authority over the appropriations of funds for Indiana University. Indiana University is completely a creature of the State and the appellee, Board of Trustees, is the State body that manages the university.

In opposition to my view, the majority opinion offers several arguments.

(1) The majority opinion appears to rely on the fact that the donated property had a *private source.* This is completely irrelevant. The important question is whether the recipient of the property was the State of Indiana.

In any case the Depository Act, Acts 1937, ch. 3, § 1, being Burns Ind. Stat. Ann. § 61-622 (e) says:

"The term 'public funds' means and includes all funds coming into the possession of the . . . treasurer of the board of trustees of any state . . . educational institution. . . ."

(2) The majority places great reliance on the case of *Trustees for Vincennes University* v. *State of Indiana* (1852), 55 U. S. 268, 14 How. 268, 14 L. Ed. 416, and the claim that Vincennes University is in the "same category" as Indiana University .

The relevance of the *Vincennes* case depends upon a claimed similarity between Vincennes University and Indiana University. As far as I can see this claim is based on no more than some unconvincing sleight of hand tricks with the words "public corporation," "quasi-Public corporation," etc. The majority wholly fails to discuss the single important point: What is the relationship between the Board of Trustees of Vincennes University and the State of Indiana? Vincennes University is *not* one of the "state universities" in Indiana. Acts 1967, ch. 358, § 1, being Burns Ind. Stat. Ann. § 28-5784. The only relevant connection I can find is that some state funds are given to support Vincennes University. Acts 1961, ch. 105, § 2, being Burns Ind. Stat. Ann. § 25-3430 says that the auditor of the State is to issue a warrant on the treasurer of the State in an amount twice that given to Vincennes University by Knox County, Indiana. There is no discretion in this regard on the part of the State at all and the budget agency has no authority over Vincennes University. The many vital connections that Indiana University has with the State, as pointed out above, are apparently absent in the case of Vincennes University and this is decisive.

(3) The majority opinion holds that the Trustees of Indiana University act in a dual capacity: first, as directors of the university, and second, as trustees of private trusts created by private donors. In the latter role they are constrained only by the common law duties and privileges surrounding private trusts.

A *private person* may have several roles, one of which may be trustee for Indiana University. But in his *role as a trustee* of Indiana University, he acts for the State through an official position created and regulated by statute. That person receives these private donations *only* in his role as trustee of Indiana University, not as a private person. They are not made to him personally. The donations are to the trustees as the body politic governing the university, and not to the persons who happen to temporarily hold positions on the Board of Trustees. It is precisely and solely their public and official role as governors of the university that makes them the targets of the donations. When they leave the office of trustee they no longer take part in managing the "private trusts" and the new officeholder does become trustee of such funds, even though he may not have been alive when the trust was originally created.

It does not take a very hard look to see that talk of "dual capacities" is an untenable subterfuge to evade the constitutional prohibition in Art. 11, § 12.

The most disconcerting aspect of the majority opinion is its total failure to even notice the larger implications of its opinion. Under that opinion there is no limit on the *percentage* of shares appellee may own in any one corporation and no limit on the *right of appellee to vote those shares.* Thus, the appellee could either wholly own a corporation or own sufficient shares to have control of it. Neither is there any limit on the type of corporation in which appellee may own stock. This presents a potential conflict of interest between the appellee's official obligation to serve the public by operating an institution of learning for the benefit of the State and its desire to serve its corporate interests. It is easy to imagine how this could come about, although I emphasize that there is nothing in the record to indicate that appellee has in any way misused its power. The majority opinion also permits the appellee to place the university through its busi-

ness corporations into economic competition with private business and industry.

Nothing I have said would prevent the donation of corporate stock to Indiana University. The appellee may accept such donations and it would have a reasonable time in which to convert the property into a form not prohibited by the Constitution.

If the citizens of this State want to amend the Constitution to permit appellee to invest donated funds in corporate stock, they may do so. The ensuing debate on the issue would go far towards clarifying the issue of what the main function of the board of trustees of a state university should be.

For the reasons stated, the judgment should be reversed.

NOTE.—Reported in 260 N. E. 2d 601.