**BOARD OF TRUSTEES OF the PUBLIC EMPLOYEES' RETIREMENT FUND OF INDIANA, Appellant,**

**v.**

**Linley E. PEARSON, As Attorney General of Indiana, Appellee.**

**No. 983 A 326.**

Supreme Court of Indiana.

Feb. 20, 1984.

Linley E. Pearson, Atty. Gen., Michael Schaefer, Deputy Atty. Gen., Indianapolis, for appellant.

Jonathan L. Birge, Robert T. Grand, John P. Price, Indianapolis, for Amici Curiae Indiana State Teachers Ass'n, Indiana Retired Teachers Ass'n.

Linley E. Pearson, Atty. Gen., William E. Dailey, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a judgment of the Wayne Circuit Court entered in an action brought by the Board of Trustees (Board) of the Indiana Public Employees' Retirement Fund (PERF). The action called for the court to construe the terms of the trust administered by the Board, and to declare whether the Board is precluded by Article XI, Section 12 of the Indiana Constitution from investing PERF money in equity securities or stocks of private corporations.

In dealing with this case, the analysis of the trial court was divided into three parts, namely: (1) The meaning of the term "stockholder", (2) the character of the Board, and (3) the character of PERF assets. In summary and paraphrased form, the trial court findings were that the term "stockholder" includes one who purchases corporate stock, that the Board is a state agency, and that PERF assets are insufficiently distinguishable from the State as to be considered other than investments of the State itself. The conclusion reached was that Article XI, Section 12 prohibits the Board from investing in and holding corporate stock. Support for the judgment may be noted in Opinions of the Attorney General, 1962 O.A.G. No. 37; 1975 O.A.G. No. 15. This appeal followed. The case is hereby transferred pursuant to Ind.R. App.P. 4(A)(10).

■ Article XI, Section 12, of the Indiana Constitution, in the clause pertaining here, provides:

"nor shall the State hereafter become a stockholder in any corporation or association."

PERF is a trust created by statute. Ind. Code §§ 5-10.3-2-1 through 5-10.3-2-3. Its purpose is to provide an incentive to state employees to remain in state service and to treat state service as a career to the end that all citizens benefit from a state government and local governments staffed by experienced and well-qualified personnel. The incentive exists by reason of the obligation of the trust to pay a pension benefit to public employees who complete the eligibility requirements. PERF is administered by a five-person board of trustees appointed by the governor who are paid a small compensation by the State. The elected state treasurer is the treasurer and custodian of the fund, and the elected state auditor draws the warrants on the fund.

The trial below saw testimony that the Board at present invests in corporate bonds having a high rating, but does not invest in stocks. Witnesses were of the opinion that according to today's investment wisdom, a prudent and balanced investment policy for PERF would include dealing to some extent in the stock market.

The moneys present in PERF requiring management and investment through the efforts of the Board are three: namely, the employer's contribution, the employees' contribution, and the earnings on the investment of trust funds. Expressly by statute, a member's contributions to the fund and interest credits belong to the member and not the State. Ind.Code § 5-10.2-3-2(c). Assets in PERF may be invested by the Board. Ind.Code § 5-10.3-2-2; Ind.Code § 5-10.3-5-3. The law also provides that the state general fund would be required to pay a deficit caused by PERF financial losses on investments. Ind.Code § 5-10.3-2-3.

The last clause of Article XI, Section 12 has been considered by this Court in recent cases. The first is *Sendak v. Trustees of Indiana University,* (1970) 254 Ind. 390, 260 N.E.2d 601, and the second is *Steup v. Ind. Housing Finance Authority,* (1980) Ind., 402 N.E.2d 1215. In *Sendak* the Court held that the State did not become a stockholder through the service of the Board of Trustees of a state university, as trustee over common stock donated in trust to the university by private donors. In *Steup,* this Court held that the State did not become a stockholder through the special statutory control relationship between the Indiana Housing Authority and assist-

ed corporations. Most recently in *Northern Indiana Bank and Trust Company et al. v. State Board of Finance of Indiana et al.*, (1983) Ind., 457 N.E.2d 527, we held that the State did not become a stockholder by reason of its deposit of public funds in savings associations even though they are not depositories under the Depository Act of 1937. The legal discussion in these cases together with statutory declaration that contributions and interest credits in the fund belong to the members and not the State, Ind.Code § 5–10.2–3–2(c), provide the basis for appellant's contention that the constitutional provision under consideration does not apply to restrict investment alternatives available to PERF and consequently the conclusion and judgments of the trial court should be reversed.

The background of Article XI, Section 12 was considered. In the *Sendak* case the Court said:

"Historically, we recognize that this provision was placed in our Constitution to prevent the use of State tax money to support private enterprise and particularly public improvements financed through private corporations, such as railroads and canals, which brought upon the State such financial disaster at the time of the promotion of such public improvements. Debates In Indiana Convention 1850, pp. 651–652, 152 A.L.R. 495." 254 Ind. at 392, 260 N.E.2d 601.

In the *Northern Indiana Bank* case historical notions were considered in further detail. We noted:

"This clause was made part of Art. XI, § 12 to prevent the State from ever again being a partner in speculation. Several delegates to the convention expressed their concern over the State speculating in private corporations. Thus, the delegate offering an amendment containing the present constitutional language stated that 'I hope the great State of Indiana will no longer be found engaged in supporting and upholding as a partner, what I call a swindling machine.' Debates, p. 651. During the debate on this issue another delegate stated:

'What right has the State of Indiana to become a partner with any speculation? She has no more right to do this than she has a right to form a regular co-partnership with a merchant or manufacturer, in any speculation looking to a profitable result. I hope this Convention will take such action, upon this subject, as will forever silence the presumption that the State of Indiana may become a partner in any money making enterprise.'

Debates, p. 652. These comments, as well as the comments of other delegates during the course of the convention, show that the purpose of the last clause in Art. XI, § 12 was to prevent the State from being a speculative partner, as it had been in the internal improvement system." 457 N.E.2d at 530.

There can be little doubt that the general purpose of the last clause of the section was to bar the State of Indiana from placing state money at risk in corporate stocks. The delegates saw an intolerable risk of loss attendant to the ownership of some stocks, and therefore to be sure that the State of Indiana would never again run that risk, enjoined the ownership of all stocks. It may be as contained in the arguments of counsel that the core concern could at this point in time be met by a less restrictive provision, limiting, let us say, the percentage of stock which the State may own in any one company, or the percentage of a state fund which may be invested in stocks and other equity securities, or requiring that certain investment devices be employed to limit loss potential. However, these possibilities can be of no moment in this tribunal. Judges must enforce the Constitution as written and intended.

Appellant and Amici Curiae ultimately rest their argument upon the *Sendak* case. Among the considerations there present were the capacity in which the school board of trustees was acting and the nature of the trust assets. The court found the bar of the last clause of Section 12 to be inap-

plicable primarily because the Board was conceived as acting in a private capacity as trustee over private trust assets. We find the case distinguishable from this case. The Board of PERF is a state agency, created by statute, and when it makes the selection of an investment for the Fund it is carrying out a statutorily prescribed duty. This is the State in its sovereign capacity. *Cf. Steup v. Indiana Housing Finance Authority, supra.* The Board's origination, its capacity, and its duties are the product of legislative and not private action. Its capacity here is singular, while the one in *Sendak* was dual.

The point is made by the Court in the *Sendak* case, that the assets in the trusts which included common stocks, were private and not public, and that this was so even though they were dedicated to a public educational purpose. Similarly, appellant contends that PERF assets are private and not public or state funds because of the declaration in Ind.Code § 5–10.2–3–2(c) that such assets belong to the members and not the State. In this regard appellant and Amici Curiae cite cases from Oregon and Louisiana in which the courts of those states have found no bar in similar state constitutional provisions against the purchase by their public employees' pension funds of common stocks, because the members and not the states, own the assets. *Sprague v. Straub*, (1969) 252 Or. 507, 451 P.2d 49; *Louisiana State Employees Retirement System et al. v. State of Louisiana et al.*, (1982) La.App., 423 So.2d 73, *aff'd* (1983) Sup.Ct. of La., 427 So.2d 1206. They are helpful but not persuasive.

■ The statutory declaration that the members own the contributions and interest in PERF means that they own these monies subject to the terms of the trust. Members cannot determine the types of investments which the Board may make. Members do not bear the risk of loss of their money in the pension fund, in the event financial losses are sustained. Unlike the situation in *Sendak*, and the cases from other states, the State of Indiana has a legal obligation by statute to reimburse

PERF for any losses due to financial failure of investments selected by its Board. If the value of stocks purchased for PERF fell in value, then the State could suffer a loss. This appears to us to be one of the types of adverse results or risks within the sweep of the clear language of the Constitution and the concerns expressed by delegates to the constitutional convention.

In sum, the last clause of Article XI, Section 12, poses a bar to the investment of PERF assets in common stocks or other equity securities, in light of the fact that such stocks would be selected by a state agency, in accordance with a statutorily prescribed duty, and the State could suffer a loss if the value of such stocks fell. The judgment is affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.