**STATE BOARD OF ACCOUNTS,**
**Appellant–Defendant,**

v.

**INDIANA UNIVERSITY FOUNDATION,**
**Appellee–Plaintiff.**

No. 28A01–9402–CV–52.

Court of Appeals of Indiana,
First District.

Feb. 24, 1995.

---

Pamela Carter, Atty. Gen., Jon Laramore, Deputy Atty. Gen. Indianapolis, for appellant.

Lynn H. Coyne, Lance W. Wonderlin, Andrews, Harrell, Mann, Chapman & Coyne, Bloomington, for appellee.

NAJAM, Judge.

## STATEMENT OF THE CASE

We are asked to decide whether Indiana University Foundation (the "Foundation") is subject to examination by the State Board of Accounts (the "Board"). The Foundation solicits and manages funds from private sources for the use or benefit of Indiana University. In 1990, the Attorney General of Indiana issued an opinion that the Foundation was subject to examination by the Board and, therefore, that its records were open to inspection under the Public Records Act. When a journalist then sought access to its records, the Foundation refused and filed a declaratory judgment action against the Board seeking a determination that the Board does not have audit authority over its accounts. The parties filed cross-motions for summary judgment. The trial court entered judgment for the Foundation, and the Board appeals.[1]

We affirm.

---

1. On December 14, 1994, this court issued an order notifying the parties that the panel assigned to this case consisted of members who have one or more degrees from Indiana University and who, from time to time, have had other relationships with the University and the Foundation. The order stated that the court would appoint another panel of judges to decide the case if either party filed a motion to disqualify the panel. Neither party filed an objection, and we heard oral argument in the old Monroe County Courthouse on January 26, 1995.

## FACTS

The Foundation was established in 1936 to further the educational goals of Indiana University. The Foundation is a private, Indiana not-for-profit corporation exempt from federal income taxation under Internal Revenue Code § 501(c)(3). Its purpose is to "receive, hold, own, manage, use, purchase, mortgage, pledge and dispose of property of all kinds, real, personal and intangible, whether held absolutely or in trust, or by way of agency or otherwise, for the benefit of Indiana University...." Record at 155 (Amended Articles of Incorporation).

The Foundation's articles of incorporation require that the President of Indiana University and at least three members of The Trustees of Indiana University (the "Trustees") shall sit on its board of directors. A majority of the Foundation's board must be graduates of the University. In addition, its board of directors has included, or presently includes, the University Chancellor, a President Emeritus of the University, the University's Athletic Director and former Trustees.

Indiana University's financial relationship with the Foundation is governed principally by two contracts under which the Foundation performs fundraising and investment management services for the University. Under a 1989 "Development Services Contract," the parties agree that:

1. The Foundation will provide to and for the benefit of [the] University development services including but not limited to fundraising programs for individuals, corporations and foundations, associations and others; administration of gifts, gift funds, and trusts; stewardship and donor relations programs; and other services which may be requested by the University from time to time.

2. The Foundation may also serve as the contracting organization or grantee for certain grants or contracts with external funding sources as mutually agreed between the parties from time to time.

Record at 31. This agreement anticipates that the Foundation will provide fundraising and other development services to the University indefinitely but that the "service fee paid by the University shall be negotiated on an annual basis." Record at 32.

In addition, Indiana University has appointed the Foundation as its agent for the management of the University's Endowment Fund pursuant to an "Investment Agency Agreement" also executed in 1989. Under this agreement, the Foundation "is authorized to receive and collect the income, issues, dividends, and profits on the property placed in its charge," agrees to distribute money from the fund to the University upon request and:

> shall have full power to buy, sell, invest and reinvest assets of the account. In the buying, selling, investing, and reinvesting, Foundation shall, at all times, exercise its best judgment based on a careful review of all factors deemed pertinent by the Foundation....

Record at 35. The Foundation's fee for these services is based on the value of the Endowment Fund, applying one percentage to the value of the Fund's "equity" assets and another percentage to the value of its "fixed income" assets, calculated quarterly. *See* Record at 87.

The Foundation is responsible for some 4,500 separate accounts which hold private donations made for the benefit of various programs at Indiana University. These accounts support such programs as University grants, student scholarships and financial aid, and the use of funds in the accounts is often restricted at the request of donors.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing a ruling on a motion for summary judgment, this court applies the same standard applied by the trial court. *Walling v. Appel Service Co.* (1994), Ind. App., 641 N.E.2d 647, 648–49. Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). All facts and inferences from the designated evidentiary matter must be lib-

erally construed in favor of the non-moving party. *Walling,* 641 N.E.2d at 649. In the instant case, the meaning of several statutes is at issue, and because the parties agree that the relevant facts are not in dispute, the construction of those statutes presents a pure question of law for which disposition by summary judgment is appropriate. *See Robinson v. Zeedyk* (1993), Ind.App., 625 N.E.2d 1249, 1251, *trans. denied; Wolf v. Kajima Int'l, Inc.* (1993), Ind.App., 621 N.E.2d 1128, 1130, *adopted* (1994), Ind., 629 N.E.2d 1237; *Faris Mailing, Inc. v. Indiana Dept. of State Revenue* (1990), Ind. Tax, 557 N.E.2d 713, 715.

## Examination by the State Board of Accounts

The central issue in this case is whether the Foundation is subject to the statutory requirement that "[t]he state examiner, personally or through the deputy examiners, field examiners, or private examiners, shall examine all accounts and all financial affairs of *every public office and officer, state office, state institution, and entity.*" IND.CODE § 5–11–1–9(a) (emphasis added) ("State Board of Accounts statute"). The Board does not allege that the Foundation has mismanaged either the monies from private sources entrusted to it by Indiana University or the gifts which the Foundation has received directly from private donors. Rather, it contends that the Foundation's account records should be subject to routine Board examination and, therefore, also open to inspection under the Public Records Act, because the Foundation qualifies as either a "public office" or public "entity" under the State Board of Accounts statute.

### I. Public Office

■ We first address the Board's contention that the Foundation is a public office under the State Board of Accounts statute. For purposes of the statute, a "public office" is defined as "the office of any and every individual who for or on behalf of the state or any municipality or any public hospital holds, receives, disburses, or keeps the accounts of the receipts and disbursements of any public funds." IND.CODE § 5–11–1–16(c). Thus, a "public office" must: (1) hold, receive, dis-

burse or keep; (2) public funds; (3) for or on behalf of the state. The Foundation does not satisfy two of these three criteria.

### A. Public Funds

The Board asserts that the Foundation's accounts are comprised of "public funds" because Indiana University is a public institution and the funds the Foundation holds for the use or benefit of the University are "impressed with a public interest," even if received from private sources. The parties agreed at oral argument that the funds the Foundation holds and manages in trust are in fact derived exclusively from private sources. Thus, the dispositive question becomes whether gifts and grants from private sources made to Indiana University, or to the Foundation for the University, retain their private character once they have been dedicated for public use.

The term "public funds" used in Indiana Code § 5–11–1–16(c) is not defined. It is a general rule of statutory construction that undefined words and phrases in a statute are given their plain, ordinary and usual meaning. IND.CODE § 1–1–4–1(1). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *Walling,* 641 N.E.2d at 649. According to its plain and ordinary meaning, funds are "public" if they relate to or affect all the people of a nation or state, or relate to community interests as opposed to private affairs. *Merriam Webster's Collegiate Dictionary* at 944 (10th ed. 1993). Here, such a generic definition is inadequate because "public funds" is a technical term which has a peculiar and appropriate meaning in law. *See* I.C. § 1–1–4–1(1).

■ The technical nature of the term "public funds" for purposes of the State Board of Accounts statute is apparent from the fact that this term is defined elsewhere in Title 5 in the article concerning the deposit and investment of public funds. Statutes relating to the same general subject matter are in pari materia and should be construed together. *See Community Hospital of Anderson & Madison County v. McKnight* (1986), Ind., 493 N.E.2d 775, 777. The legislative definition of certain words in one stat-

ute, while not conclusive, is entitled to consideration in construing those same words in another statute. *State v. Turner* (1991), Ind., 567 N.E.2d 783, 784.

For purposes of Article 13 of Title 5, " '[p]ublic funds' means all fees and funds of whatever kind or character coming into the possession of any public officer by virtue of that office." IND.CODE § 5–13–4–20. This definition indicates that funds are public only when they are in the possession of, or are entrusted to, a public officer. The funds in question in the present case would not qualify as "public funds" while held by a not-for-profit corporation such as the Foundation whose directors are not public officers. *See* IND.CODE § 5–13–4–21 ("public officer" defined as person elected or appointed to office of state or political subdivision, or officer of body established by law). In any event, the definition of public funds which appears in Article 13 is not conclusive in determining the meaning of that term as used in Article 11, the State Board of Accounts statute. *See* IND.CODE § 5–13–4–1 (definitions apply only throughout Article 13); *Turner*, 567 N.E.2d at 784.

■ Where a statute may have more than one reasonable interpretation, it is our foremost objective to determine and give effect to the intent of the legislature. *See Amoco Production Co. v. Laird* (1993), Ind., 622 N.E.2d 912, 915; *Spaulding v. International Bakers Servs., Inc.* (1990), Ind., 550 N.E.2d 307, 309. If statutory terms are susceptible to alternative meanings, courts should apply a meaning which is consistent with the intent of the statute. *See City of Evansville v. International Ass'n of Fire Fighters* (1987), Ind., 516 N.E.2d 57, 59. "Statutes are to be construed in connection and in harmony with the existing law and as a part of a general and uniform system of jurisprudence." *Schwartz v. Castleton Christian Church, Inc.* (1992), Ind.App., 594 N.E.2d 473, 476, *trans. denied.*

Here, we must determine whether the legislature intended to consider private gifts, held by a not-for-profit corporation for Indiana University, as "public funds" subject to the State Board of Accounts statute. We believe that our legislature's intent on this question is found in the statutes it has enacted for private support of our state universities.

### Private Gift Statutes

■ The legislature has empowered the Trustees to accept private gifts, bequests and devises of personal and real property "for the maintenance, use, or benefit of Indiana University" or "to be administered for other public, charitable purposes" for the benefit or use of its students. IND.CODE § 20–12–4–1. The legislature has also given the Trustees the specific authority to receive, accept, hold, administer and use such gifts, bequests and devises "with the terms, conditions, obligations, liabilities, and burdens" imposed on them by the donors if, in their discretion, it would be in the best interest of the University.[2] IND.CODE § 20–12–4–2. Under these statutes (collectively the "private gift statutes"), the legislature has granted the Trustees broad authority and discretion to accept and administer private donations.[3]

■ The Trustees may delegate their statutory power to accept private gifts under the private gift statutes to other persons or entities. *See* IND.CODE § 20–12–1–4 (permitting trustees to delegate "such authority as [they] may possess"). Thus, when the Foundation solicits private donations on behalf of Indiana University, or manages donations for the use or benefit of the University, the Foundation is acting under authority delegated to it by the Trustees.

Our supreme court considered the character of funds received and held by the Trustees under the private gift statutes in *Sendak v. Trustees of Indiana University* (1970), 254 Ind. 390, 260 N.E.2d 601. In *Sendak*, the

---

**2.** The legislature has granted the Trustees the additional discretion to invest or reinvest the proceeds derived from the sale of real property received by gift or bequest in a manner which, in their judgment, will be of greatest benefit to the University. *See* IND.CODE § 20–12–5–1.

**3.** The powers bestowed under the private gift statutes are not limited to The Trustees of Indiana University but are also granted to the trustees of Indiana's four other state universities. *See* I.C. § 20–12–4–1.

supreme court was asked to decide whether the Trustees may lawfully hold, invest and reinvest gifts received from private sources in corporate stock. *Id.* at 391, 260 N.E.2d at 601–02. The Attorney General contended that the Trustees were violating the Indiana Constitution, which prohibits the State of Indiana from becoming a stockholder in any corporation. *Id.; see* IND.CONST. art. 11, § 12.

Our supreme court interpreted the private gift statutes and concluded that the Trustees act in a dual capacity, first as directors and managers of the University's operation and second as a trustee of private trusts created by private donors. *Id.* at 393, 260 N.E.2d at 602–03 (citing former versions of Indiana Code §§ 20–12–4–1 and –2). Concerning the Trustees' second role, the supreme court in *Sendak* observed that the Trustees have:

> the common law duties and privileges of a private trustee to administer funds which the statute authorizes it to accept on terms and conditions fixed by private donors. . . .
>
> . . . The mere fact that the trustees happen to act in another capacity and are a corporate body affected with a public interest does not prohibit them from also acting as trustees of private funds, . . . *where the statute specifically authorizes such activity.*

*Id.* at 393–94, 260 N.E.2d at 602–03 (emphasis added). The court held that because the Trustees do not own gifts, bequests and devises received from private sources, the Indiana Constitution does not prohibit the Trustees from investing those funds in corporate stock. *Id.* at 397, 260 N.E.2d at 604–05.

■■■■■ The *Sendak* decision establishes that gifts, bequests and devises made by private donors for the use or benefit of Indiana University are private, not public funds. They are not "public funds" because the Trustees do not hold those funds as a corporate body politic which governs the University. *See id.* at 393, 260 N.E.2d at 602. Instead, the Trustees act in their capacity as a private trustee of a private trust. *Id.* Accordingly, when the Foundation, a private, not-for-profit corporation, accepts and holds private donations pursuant to powers delegated to it by the Trustees, those

funds must be considered "private" rather than "public" funds.

■■■■■ The Board of Accounts contends that the significance of the *Sendak* decision is confined to its precise holding that private gifts made to Indiana University are not funds owned by the State of Indiana. It observes, and we agree, that there are categories of public funds, such as those held by municipalities, which are not owned by the State but which are nonetheless subject to examination under the State Board of Accounts statute. A municipality or other political subdivision is not considered the "state" under the statute but qualifies as a "public office" subject to Board examination. *See* IND.CODE § 5–11–1–16(b), (c).

However, to determine the precedential value of *Sendak,* we must look beyond the narrow question decided and consider the underlying principle upon which the supreme court based its decision. *See* Benjamin N. Cardozo, *The Nature of the Judicial Process* at 28 (1921) (in considering precedents, court must first extract from precedent the underlying principle). The underlying principle recognized by the court in *Sendak* is that the Trustees serve in a dual capacity as both a public body and a private trustee. While the Trustees are a body politic created by statute to govern Indiana University, "[t]he legislature contemplated that there would be *private funds* placed in trust with the trustees for certain specific purposes and for the benefit of those connected with the University and the University's activities." *Sendak,* 254 Ind. at 393, 260 N.E.2d at 603 (emphasis added). That same principle applies to funds held by the Foundation when it acts under delegated authority as "some other private trustee for the same purposes, namely, educational purposes at Indiana University." *Id.*

### Deposit and Investment Restrictions

■■■■■ As we have stated, our foremost objective in this case is to ascertain the legislature's intent in the State Board of Accounts statute. It is presumed that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Walling v. Ap-*

*pel Service Co.* (1994), Ind.App., 641 N.E.2d 647, 651.

The purpose of the State Board of Accounts statute is to discover wrongdoing by any public officer to whom public funds are entrusted and to recover that portion of the funds for which the officer is liable by reason of his failure faithfully to discharge the duties of his trust prescribed by law. *State v. Clamme* (1923), 80 Ind.App. 147, 161–62, 134 N.E. 676, 681, *trans. denied.* Board examination, in other words, is designed to ensure the safekeeping of funds held under a trust created by law. *See id.* at 162, 134 N.E. at 681. For these reasons "public funds" subject to the State Board of Accounts statute are also governed by specific statutory restrictions on their deposit and investment. *See, e.g.,* IND.CODE § 5–13–6–1 *et seq.* (procedure for deposit of public funds in state depositories); IND.CODE § 5–13–9–1 *et seq.* (describing public funds that may be invested and manner of investment).

Gifts made by private donors for Indiana University are not similarly restricted. For example, the Trustees may lawfully invest donations from private sources in the stock of private corporations. *See Sendak,* 254 Ind. at 397, 260 N.E.2d at 604–05. The Trustees' discretion to utilize private gifts is further shown by their statutory authority to invest or reinvest, for the greatest benefit to the University, the proceeds derived from the sale of real property received by gift or bequest. *See* I.C. § 20–12–5–1. Their discretion is limited only by the terms and conditions imposed on gifts by donors and by their fiduciary duty under the Trust Code to exercise prudent judgment in the management of these assets.[4] *See Sendak,* 254 Ind. at 393, 397, 260 N.E.2d at 603, 605; *accord* IND.CODE § 20–12–1–2(a)(10) (Trustees may establish written policies for investment

of funds pursuant to a trustee's general powers under Trust Code). Even where the legislature has granted the Trustees the specific power to designate private gifts for *public purposes,* they are likewise restricted only by the fiduciary duties of a private trustee. *See* IND.CODE § 20–12–4–1(2) (trustees may accept gifts "to be administered for other public, charitable purposes"); *Sendak,* 254 Ind. at 394, 260 N.E.2d at 603.

The legislature's broad statutory grant of discretion to the Trustees to use and invest funds from private sources is wholly inconsistent with those other statutes enacted to restrict the deposit and investment of public funds subject to Board examination. The Trustees are not a public officer discharging the duties of a trust created by law when they hold gifts in a private trust. *See Sendak,* 254 Ind. at 393, 260 N.E.2d at 602; *Clamme,* 80 Ind.App. at 162, 134 N.E. at 681; *cf.* IND.CODE § 5–13–4–20 ("public officer" for purposes of Article 13 of Title 5 is officer of body established by law). This statutory scheme suggests that the legislature did not intend to treat private gifts held by the Foundation for the use or benefit of Indiana University as public funds governed by the State Board of Accounts statute.

The Board of Accounts insists nevertheless that the various gifts from private donors received and held by the Foundation for Indiana University are "public funds" because they are "impressed with a public interest." *See Storen v. Sexton* (1936), 209 Ind. 589, 597, 200 N.E. 251, 254. It is true that such gifts are impressed with a public interest in a general sense, but only as a result of the University's status as a public institution. We cannot extract one phrase from the *Storen* decision and conclude that this language taken alone determines whether the funds at issue here are "public funds."[5] The court in *Storen* was discussing

---

4. The Trustees's fiduciary duties are the obligation to "exercise the judgment and care under the circumstances then prevailing which persons of prudence, discretion, and intelligence exercise in the management of their own affairs...." IND.CODE § 30–4–3–3(c).

5. The phrase from *Storen* upon which the Board of Accounts bases its argument is contained in the following discussion:

The Public Depository Law ... requires the deposit in state depositories of all public funds. For the purposes of that law, and the law here under consideration [Sinking Fund for Public Deposits Act], *all funds impressed with a public interest,* that is, funds raised by general taxa-

"funds arising from private sources *in the hands of public officers.*" *Id.*, 200 N.E. at 255 (emphasis added). The Foundation's directors are not public officers. *See* IND. CODE § 5–13–4–21.

Indeed, in *Storen* the supreme court did not consider the character of private gifts made to Indiana University; rather, the court addressed the status of funds deposited in public depositories and the state sinking fund for public deposits. As we have demonstrated, private gifts made to or for the benefit of the University are not funds which must be deposited in state depositories. *See Sendak*, 254 Ind. at 393–94, 260 N.E.2d at 603; IND.CODE § 5–13–6–1 *et seq.;* IND. CODE § 5–13–4–20. An isolated phrase from *Storen* cannot overcome the express provisions of the private gift statutes and the interpretation of those statutes in *Sendak* which, as shown below, has been approved by our legislature.

### Legislative Acquiescence

The Board also argues that the legislature intended to subject the Foundation to examination under the State Board of Accounts statute because it performs "public functions." Brief of Appellant at 24–25. However, the history of the private gift statutes reveals a contrary legislative intent.

The private gift statutes were enacted in 1931. *See* IND.CODE §§ 28–5712 and –13 (Burns 1933). In 1970, our supreme court interpreted these statutes in *Sendak* and held that private gifts made to Indiana University are private rather than public funds. *See Sendak*, 254 Ind. at 393, 260 N.E.2d at 602 (quoting sections 28–5712 and –13). Then, in 1984 the supreme court distinguished The Trustees of Indiana University from the Board of Trustees of the Public Employees' Retirement Fund and reaffirmed the principle adopted in *Sendak* that a state agency may act in both a public and private capacity:

> The Board of PERF is a state agency, created by statute, and when it makes the selection of an investment for the Fund it

is carrying out a statutorily prescribed duty. *This is the State in its sovereign capacity.* The Board's origination, its capacity, and its duties are the product of legislative action. *Its capacity here is singular, while the one in Sendak was dual.* *Board of Trustees of Public Employees' Retirement Fund of Indiana v. Pearson* (1984), Ind., 459 N.E.2d 715, 718 (emphases added) (citation omitted). One year after the *PERF* decision and 14 years after the *Sendak* decision, the General Assembly recodified one of the private gift statutes making only minor, immaterial changes. *See* I.C. § 20–12–4–2 (amended 1985).

It is a rule of statutory construction that when the legislature reenacts in substantially the same form a statute which the courts have previously construed, the legislature is deemed to have adopted the judicial construction of that statute. *City of Indianapolis v. Schmid* (1968), 251 Ind. 147, 153, 240 N.E.2d 66, 69; *City of Portage v. Rogness* (1983), Ind.App., 450 N.E.2d 533, 535, *trans. denied; State ex rel. Moore v. Smock* (1973), 156 Ind.App. 158, 163, 295 N.E.2d 857, 860. The legislature's 1985 reenactment of Indiana Code § 20–4–12–2 was in substantially the same form as the 1931 version of that statute construed by our supreme court in *Sendak*.

The legislature's acquiescence in the *Sendak* and *PERF* decisions indicates its approval of a construction of the private gift statutes that private gifts made to Indiana University retain their character as private funds and are not public funds. The legislature's deference to these decisions also demonstrates an acceptance of the proposition that the Trustees perform public educational functions as a trustee of a private trust, even if they also "happen to act in another capacity and are a corporate body affected with a public interest." *Sendak*, 260 N.E.2d at 603; *see PERF*, 459 N.E.2d at 716, 718 (contrasting dual capacity of Trustees with singular capacity of Board of PERF, which administers a "trust created by statute" under

tion, or special levies upon special assessment districts, or the income from publicly-owned properties, or *funds arising from private sources in the hands of public officers which*

are designed for public use, must be deemed public funds.
*Storen*, 209 Ind. at 596–97, 200 N.E. at 254–55 (emphases added).

duties that are "product of legislative not private action"). Courts must construe statutes as part of a general and uniform system of jurisprudence. *Schwartz*, 594 N.E.2d at 476. Therefore, we conclude that the legislature did not intend to consider gifts received pursuant to the private gift statutes as "public funds" under the State Board of Accounts statute.

Our understanding of the legislature's intent in the State Board of Accounts statute is buttressed by an additional consideration. By enacting the private gift statutes, the legislature recognized the important role that philanthropy plays in support of Indiana's public universities. That role is as important today as it was when these statutes were enacted in 1931. In recent years there has been a decline in the share of state budget appropriations devoted to public higher education in Indiana. *See Fiscal Policy Bulletin*, 3 Indiana Fiscal Policy Institute 1–2 (1994). These economic realities confirm that private support of public higher education remains an essential source of independent funding which supplements public appropriations and which should not be subject to the State Board of Accounts statute.

We conclude that gifts and grants from private sources made to Indiana University, or to the Foundation for the University's use or benefit, retain their private character and are not "public funds" as that term is used in Indiana Code § 5–11–1–16 for purposes of the State Board of Accounts statute. Funds from private sources are not "public funds" when held by the Trustees. Likewise, because such funds are not public when held by Indiana University, a public institution, they are not "public funds" when in the custody of the Foundation, a private, not-for-profit corporation acting under statutory authority delegated to it by the Trustees.

As in *Sendak*, "we have here involved *only* funds derived from private gifts, bequests, and devises. Funds derived from public source by taxation or otherwise are not involved." *Sendak*, 254 Ind. at 392, 260 N.E.2d at 602 (emphasis in original). Accordingly, because the Foundation's trust accounts are comprised only of private proper-

ty, we conclude that the Foundation does not hold, receive, disburse or keep "public funds."

### B. For or on Behalf of the State

Even if funds from private donors held for the use or benefit of Indiana University were public funds, the Foundation would also be required to hold those funds "for or on behalf of the state" to qualify as a public office subject to the State Board of Accounts statute. IND.CODE § 5–11–1–16(c). The principle established by our supreme court in *Sendak* once again decides this question. The "state" for purposes of the State Board of Accounts statute includes an agency of the state, and Indiana University is a state agency. IND.CODE § 5–11–1–16(b); *see* IND.CODE § 4–12–1–2(d) ("state agency" includes universities and colleges supported in whole or in part by state funds). However, the University does not act as a state agency when, pursuant to the private gift statutes, the Trustees accept and administer private gifts. The University is not the "state" under those circumstances but instead assumes the role of a private trustee of a private trust. *See Sendak*, 254 Ind. at 393, 260 N.E.2d at 602.

The Foundation does not administer funds from private sources "for or on behalf of the state." As we have shown, funds held by the Foundation are also not "public funds." On these two grounds we hold that the Foundation is not a "public office" subject to examination under the State Board of Accounts statute.

### II. Public Entity

The Board of Accounts contends in the alternative that the Foundation is subject to examination as a public "entity." An "entity" is defined as "any provider of goods, services, or other benefits that is: (1) maintained in whole or in part at public expense; or (2) supported in whole or in part by appropriations or public funds or by taxation." IND. CODE § 5–11–1–16(e).

Here, we do not focus on the character of private donations held by the Foundation for Indiana University's use or benefit, which

are private rather than public funds. *See* Section I. We are concerned only with public funds the University pays to the Foundation for fundraising under the Development Services Contract and for investment management services under the Investment Agency Agreement. The Board asserts that according to the test established by our supreme court in *Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.* (1991), Ind., 577 N.E.2d 208 ("*ICVA*"), the Foundation is maintained or supported by public funds because this money is not a "fee for services" but is instead in the nature of a subsidy from a public agency.

The *ICVA* case involved a request by Indianapolis Newspapers, Inc. to review, pursuant to the Public Records Act, the records of Indianapolis Convention and Visitors Association, a not-for-profit corporation (the "Association"). *Id.* at 209–10. To determine whether the Association's records were subject to public disclosure, the supreme court was required to resolve the threshold question of whether it was an "entity" subject to examination by the State Board of Accounts. *Id.* at 212; *see* IND.CODE §§ 5–14–3–2 and –3; IND.CODE § 5–11–1–16(e); IND. CODE § 5–11–1–9(a). A portion of the Association's revenue was received from the Indianapolis Capital Improvement Board, a public agency ("CIB"). *ICVA,* 577 N.E.2d at 209. Indianapolis Newspapers asserted that these revenues were in the nature of a grant rather than a "fee" for services provided to CIB, and that because the Association was maintained or supported in part by public funds, its records were subject to examination under the State Board of Accounts statute and open to public inspection under the Public Records Act.

The supreme court in *ICVA* observed that a private entity is not maintained at public expense or supported by public funds "merely because public monies make up a certain percentage of its revenue." *Id.* If the relationship "is, in fact, a fee-for-services (or goods) agreement then, clearly, an entity is not maintained or supported by public funds." *Id.* at 212–13. The court reasoned:

> Otherwise, any entity who performed any service or provided any good for a govern-

mental entity would find its business records available for public inspection under the Public Records Act. We do not perceive this to be the legislature's intent in passing the Public Records Act.

*Id.* at 213. The supreme court held that the Association was supported by public funds and, thus, subject to the State Board of Accounts statute and the Public Records Act based on the following facts: (1) the Association received monthly payments from CIB regardless of whether it booked conventions or performed tourism services; (2) the amount of those payments was not negotiated under their contract but predetermined by CIB as approximately 20% of the city hotel-motel tax collected in a given year; (3) the contract stated that the CIB "financially supported" the Association with those tax receipts; and (4) the Association's federal tax returns described money received from CIB as "indirect public support." *Id.*

■ We conclude that the money paid by Indiana University to the Foundation constitutes a fee for services rendered under the test established in *ICVA*. Both the Development Services Contract and the Investment Agency Agreement are replete with references to the "fees" the Foundation shall receive for performing its obligations under the contracts. In its tax returns the Foundation describes moneys paid under its contracts with Indiana University as "Management & Various Serv. Fees." Record at 428.

Unlike in *ICVA*, the Foundation's fees under the contracts are not calculated by reference to the amount of tax revenue or appropriations received in any particular year. The Development Services Contract provides that the "service fee paid by the University shall be negotiated on an annual basis." Record at 82. The record shows that the Foundation proposes a fee each year for fundraising services and that the Trustees normally approve the amount proposed. That fee is, therefore, determined by agreement of the parties. The Investment Agency Agreement similarly provides that the Foundation shall "bill" Indiana University for its investment management fees, which are to be determined by a percentage of the value of the University's Endowment Fund on a

quarterly basis. Record at 35 and 37. The *ICVA* decision is distinguishable because under its contracts with the University, the Foundation receives fees each year based on fundraising and investment management services it actually performs.

The Foundation's use of its own endowment fund, which consists exclusively of private donations solicited on behalf of Indiana University, is not a "sophisticated form of subsidy" as the Board contends. Reply Brief at 6. The Foundation operates at a loss on many of the services it performs for the University and then covers its losses with income earned on its endowment fund. The Board reasons from this arrangement that the University subsidizes the Foundation's losses by allowing it to retain income intended to benefit the University. However, income earned on the Foundation's endowment fund cannot be considered a subsidy from a public agency because, as we have concluded, all private donations made for the use or benefit of Indiana University are private funds held in trust for the University.

Further, the *ICVA* decision does not require that we consider the profitability of a private, not-for-profit corporation's business dealings with a public agency as a factor in determining whether the corporation is maintained or supported by public funds. The reason is obvious: not-for-profit corporations like the Association and the Foundation are not formed to make a profit. Indeed, the fact that the Foundation may incur losses on services provided to Indiana University undercuts the Board's contention that the University subsidizes the Foundation. Beyond determining that the Foundation actually performs services under its contracts for fundraising and investment management, this court may not inquire into the adequacy of the consideration exchanged in these contracts. *See Hamlin v. Steward* (1993), Ind. App., 622 N.E.2d 535, 539.

The Board of Accounts also asks us to consider the entire relationship between the Foundation and Indiana University rather than specific transactions. The Board emphasizes that the boards of both the Foundation and the University have some common members and that the Foundation exists solely to further the University's interests.

Again, there is no basis for such an inquiry under our supreme court's analysis in *ICVA*, which requires only a determination whether the money paid by a public agency to a private entity is a fee for services or a subsidy. The Board does not contend that the Foundation is an alter ego of Indiana University, and there is no reason to look beyond the contractual relationship of the parties.

We cannot say that under its contracts with the Foundation, Indiana University is "contractually obligated to support" the Foundation regardless of its performance. *ICVA*, 577 N.E.2d at 214. Rather, given that the Foundation solicited and managed more than $22 million in private donations for Indiana University in 1992 alone and coordinates investment of the University's Endowment Fund, the Trustees have "received a quid pro quo in sufficiently identifiable and measurable quantities of services for any public expenditures." *Id.* The Foundation is not, either in whole or in part, maintained at public expense or supported by public funds. We hold that the Foundation does not qualify as a public "entity" subject to examination by the Board.

### III. Public Records Act

The last question before us is whether the Foundation is also governed by the Public Records Act. The Public Records Act permits the inspection and copying of public records of any public agency. IND.CODE § 5–14–3–3(a). The term "public agency" has several definitions under the Act. *See* IND.CODE § 5–14–3–2. In this case the Board of Accounts contends only that the Foundation qualifies as a public agency under the Public Records Act because it is an entity or body that is subject to "an audit by the state board of accounts." *Id.*

We have already concluded that the Foundation is not subject to examination by the State Board of Accounts. *See* Sections I, II. Therefore, the Foundation does not constitute a "public agency" as an entity subject to Board examination, and it is not governed by the inspection requirements of the Public Records Act on that basis.

### CONCLUSION

Private donations received by Indiana University Foundation for the use or benefit of

Indiana University are private not "public funds" for purposes of the State Board of Accounts statute. The Foundation also does not hold private donations "for or on behalf of the state." When The Trustees of Indiana University delegate their authority to accept and hold such gifts to the Foundation, the University acts as a private trustee and is not performing the functions of a state agency. The Foundation is not a "public office" under the statute.

Further, the Foundation does not meet the definition of a public "entity" under the State Board of Accounts statute because it is not maintained at public expense or supported by public funds. The Foundation receives a fee for the services it provides to Indiana University which does not constitute a grant or subsidy from a public agency.

We hold that the Foundation is not subject to examination by the State Board of Accounts. We likewise hold that the Foundation is not a public agency whose records are open to inspection under the Public Records Act because it is not subject to Board examination.[6]

The judgment is affirmed.

ROBERTSON and BAKER, JJ., concur.

---

6. We do not decide in this appeal whether the Foundation qualifies as a "public agency" under one of the other definitions of that term in the Public Records Act. See IND.CODE § 5–14–3–2.